## Hildeburn *et al. versus* Curran.

1. If a witness be cross-examined to a fact collateral and irrelevant and he answers without objection, he cannot be contradicted.

2. The test, whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as part of his case.

3. In a suit by C. against H. on a note, there being a plea of set-off, if the note was given by mistake, nothing then being due to C., the note was of no value in determining the amount due to the defendant.

4. If there was in fact due to C. the amount of an entry in H.'s books, it was immaterial that the clerk of H. had made the entry without his knowledge or consent.

February 14th 1870. Before READ, AGNEW, SHARSWOOD and. WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* To July Term 1869, No. 156.

This was an action of assumpsit brought, November 2d 1867, by P. H. Curran against Joseph H. Hildeburn and Henry M. Hildeburn, trading as Hildeburn & Brother.

The cause of action was the following note:—

[Hildeburn *v.* Curran.]

"$1000.00                         Philadelphia, March 1st 1867.

"Ninety days after date we promise to pay to the order of P. H. Curran one thousand dollars without defalcation value received.

"HILDEBURN & BRO.

"Endorsed, P. H. CURRAN."

The pleas were non assumpsit and set-off, of which notice was given.

The case was tried, April 20th 1869, before Stroud, J.

The plaintiff gave the note in evidence and rested.

The defendants called David Smith, their book-keeper, who testified that Curran had been in the employ of the defendants as travelling salesman for five years before 1866; the salaries of all persons in defendants' employ had been reduced about 1862, the plaintiff's was reduced to $400; it was afterwards raised to $800 and, after 1864, to $1000; his salary was always paid at the end of the year within a small amount, which was paid shortly afterwards. At January 1st 1866 there were due him $85.50; he returned in February from travelling and in making his returns retained $300 or $400. He asked about July 1866 for a note for $1500; he did not say whether or not it was for salary; witness said that he knew from plaintiff's relations to defendants he could get a note for double the amount. J. Hildeburn was not in town; witness said he would get H. Hildeburn to sign the note; who the plaintiff knew, was not in the habit of signing firm notes; it was so signed and given to Curran who said, "that squares my salary." He left for Europe on the 20th of July, and returned early in December: at his request witness gave him a check for $500 and another note for $1000 without consultation with any one; after that note had been due, witness got the note in suit to renew it. Afterwards witness found that plaintiff had charged himself with other merchandise; the charges were after all his salary had been paid; J. Hildeburn's attention had not been called to the state of the accounts until after the note in suit had become due. At an interview between them Curran claimed that his salary was to be paid in gold, which Hildeburn denied. On the 1st of January 1867 the balance due by plaintiff to defendants was $1350.44. Witness also testified that the plaintiff did not travel half the time. The defendants gave evidence by their accounts, notes and oral testimony, for the purpose of showing that the plaintiff had not been in their employ during the time he alleged, and that he was largely indebted to them; that his salary was not so much as he claimed; that he had gone to Europe without their permission.

The plaintiff in rebuttal testified himself, that the defendants agreed to give him the salary which he claimed, and to other matters in answer to the defence. Bernard Owens testified as to the time the plaintiff left, and also to the question of salary.

On cross-examination he testified: "I did not receive any

letter from Mr. Curran, stating that he was not coming back from Europe ; I did not tell Mr. Hildeburn that Curran was not coming back ; I did not say to Mr. Dubosq that I had received a letter stating that Mr. Curran was not coming back." The plaintiff then closed his case.

The defendants offered to prove by Philip L. Dubosq, that Bernard Owens had said to Mr. Dubosq in the fall of 1866, that he had a letter from the plaintiff, to the effect that Curran was not coming back to this country ; that he had not informed Mr. Hildeburn of Mr. Curran's intention as yet, but that if he (Mr. Dubsoq) would bring his nephew up to-morrow, he would tell Mr. Hildeburn to-day ; and that in consequence of this conversation he did take his nephew to Mr. Hildeburn's store the next day, and his nephew was employed in Mr. Curran's place.

The plaintiff objected to the offer ; it was rejected by the court, and a bill of exceptions sealed.

The defendants submitted these points :—

1. If the jury believe the testimony that Patrick H. Curran, the plaintiff, was in the employ of the defendants as their travelling clerk and salesman, and that he left their employment in July 1866, and never afterwards acted in that capacity, there would be nothing due to plaintiff for salary after that date.

2. If plaintiff was employed by defendants at a salary by the year, and left defendants' employ without the knowledge or consent of defendants, he thereby forfeited all claim to salary from and after the beginning of that year in which he left.

3. If he left with the knowledge and consent of the defendants, the amount due him at that time was only his proportion of the year's salary to the date of his leaving, whatever that might be.

4. If the jury believe that there was nothing due to the plaintiff by the defendants, at the time the note sued on was given, the plaintiff cannot recover in this action.

5. If the jury find from the testimony that there was nothing due to the plaintiff by the defendants at the time the first note for $1500 was given, and that the note sued on was given in renewal of the same under a mistake of fact on the part of defendants, as to the state of the accounts between the parties, the jury should not allow anything to the plaintiff for the note sued on, in determining what amount may be due to the defendants.

6. If the jury believe that the plaintiff has been overpaid by the defendants, they must find and certify in their verdict for the defendants what amount is due to the defendants by the plaintiff.

7. If the jury believe that the plaintiff had constant access to the books of the defendants, and from time to time made entries upon the same, charging himself with several items in his own account, they have a right to infer and presume that the salary with which he was credited for the years preceding 1866, was his

proper salary for those years, and that the same salary was continued, unless a larger salary was actually agreed upon.

8. If the jury believe that subsequent to the giving of the note sued on, the accounts of P. H. Curran were balanced by the book-keeper, without any direction on the part of the defendants so to do, and without their knowledge or consent, they should disregard the item of credit in the account of $1277.59 altogether.

The court affirmed the 1st, 2d, 3d, 6th and 7th points, and refused the 4th, 5th and 8th points.

The verdict was for the plaintiff for $1113.33.

The defendants took out a writ of error, and assigned for error—

1. The ruling as to the evidence.

2. The answer to their 4th point.

3. The answer to their 5th point, and the answer to their 8th point.

*G. W. Biddle* (with whom was *A. M. Burton*), for plaintiff in error.—One question was the length of time the plaintiff was out of defendants' employ. The testimony of Owens was introduced by plaintiff to show at what time he left—what he had previously said connected with that was pertinent and not collateral: Gaines *v.* Commonwealth, 14 Wright 327; Gregg Tp. *v.* Jamison, 5 P. F. Smith 468; 1 Greenl. Ev. § 462 and notes; Attorney-General *v.* Hitchcock, 1 Exch. 91; 2 Phillips 970. The contest on the note being between the original parties, the consideration might be inquired into: Clement *v.* Reppard, 3 Harris 113; Barnet *v.* Offerman, 7 Watts 130; Hill *v.* Buckminster, 5 Pick. 391; Geiger *v.* Cook, 3 W. & S. 266; Lenheim *v.* Wilmarding, 5 P. F. Smith 73; Wood *v.* Downes, 18 Ves. 123; Crowe *v.* Ballard, 3 Br. Ch. Rep. 120; Murray *v.* Palmer, 2 Sch. & Lef. 486; Dunbar *v.* Tredennick, 2 B & B. 317. The giving of the note in mistake might be corrected, as payments made in mistake may be recovered back: Whitcomb *v.* Williams, 4 Pick. 228; Waite *v.* Leggett, 8 Cowen 195; Chitty on Cont. 543 and note 544; Snyder *v.* Findley, Coxe 48; Lancaster Co. Bank *v.* Albright, 9 Harris 228; White *v.* Heylman, 10 Casey 142; 2 Greenl. Ev. § 121; Miles *v.* Stevens, 3 Barr 21; Thomas *v.* Brady, 10 Barr 168; Balt. and Ohio Railroad *v.* Hoge, 10 Casey 214.

*J. P. O'Neil* (with whom was *P. E. Carroll*), for defendant in error.—No harm was done by rejecting the evidence: Lothrop *v.* Wightman, 5 Wright 305; Scott *v.* Baker, 1 Id. 330; Wright *v.* Cumpsty, 5 Id. 102.

The opinion of the court was delivered, February 28th 1870, by SHARSWOOD, J.—The first assignment of error is, that the court

[Hildeburn v. Curran.]

below erred in rejecting evidence offered for the purpose of contradicting a witness examined on behalf of the plaintiff below. The declaration was on a note given, as was alleged, for services due the plaintiff, as the salesman of the defendants, with the common counts. One of the questions involved in the controversy appears to have been the period of time the plaintiff had been in the service of the defendants. He had been absent abroad and returned. The witness had been asked in cross-examination whether he had not said to Mr. Dubosq that he had received a letter stating that Mr. Curran was not coming back? This he denied. Mr. Dubosq was produced by the defendants, and they offered to prove by him that the witness had said to him in the fall of 1866 that he had a letter from the plaintiff to the effect that he was not coming back to this country; that he had not informed Mr. Hildeburn of Mr. Curran's intention as yet, but that if he (Mr. Dubosq) would bring his nephew up to-morrow, he would tell Mr. Hildeburn to-day; and that in consequence of this conversation he did take his nephew to Mr. Hildeburn's store the next day, and his nephew was employed in Mr. Curran's place. The rule is well settled, that if a witness is cross-examined to a fact purely collateral and irrelevant to the issue, and answers it without objection, he cannot be contradicted. The reason is obvious. The investigation might thus branch out into any number of immaterial issues upon the mere question of the credibility of a witness: 1 Greenl. on Ev., § 448; Griffith v. Eshelman, 4 Watts 51; Elliott v. Boyles, 7 Casey 65. Was then the fact that the plaintiff had written from abroad that he did not intend to return, and in consequence of it another salesman had been employed in his place, material? Clearly not. If the plaintiff had returned in point of fact, and with the knowledge and consent of the defendants resumed his position in their store, he made out his claim for services subsequent to his return, otherwise not. It mattered not what his intention may have been, nor whether the defendants had employed another to supply his place in the *interim*. The test of whether a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea? Applying this test, it is evident that the learned judge below committed no error in rejecting this offer.

The second assignment of error is to the refusal of the court to charge as requested in the defendants' fourth point, which was, that " if the jury believe that there was nothing due to the plaintiff by the defendants at the time the note sued on was given, the plaintiff cannot recover in this action." The plaintiff had given in evidence the note and there rested; but the subsequent evidence, both on the part of the defendants, and in rebuttal on the part of the plaintiff, placed before the jury the whole question, of what,

[Hildeburn *v.* Curran.]

if anything, was due to the plaintiff under the common counts. That evidence was received without objection on either side. Had the defendants simply shown that there was nothing due at the time the note was given, an offer by the plaintiff to prove a claim for subsequent services, if objected to, would have been inadmissible. It would have been a new case not in rebuttal. But the evidence having been received without objection, if upon the whole it appeared that anything was due to the plaintiff at the time the action was brought, he was entitled to recover that on the common counts, whether there was anything due at the time the note was given or not. It would, therefore, have been a manifest error for the court to have charged as requested.

But we are of opinion that the learned judge below fell into an error in declining to charge as he was asked in the fifth point of the defendants, which forms the subject of the third assignment. That point was in effect, that if nothing was due on the note at the time it was given, the jury ought to allow nothing upon it in determining what amount may be due to the defendants. This point was evidently framed in reference to the claim of the defendants to a verdict in their favor under the plea of set-off, and so as not to appear to admit that anything was due to the plaintiff. But as far as the law was concerned, it mattered not whether the balance finally ascertained should be found in favor of the plaintiff or the defendant. The note was primâ facie evidence between the parties, but that was all. If it was without consideration, it was unavailable as evidence of indebtedness. If, therefore, the defendants had proved to the satisfaction of the jury, that at the time the note was given nothing was due, they were bound to dismiss it from their consideration, and confine their attention to the question, whether any, and what amount, either party was entitled to upon a just settlement of the account, without regard to the note. This assignment of error is therefore sustained.

The fourth assignment is, that the court erred in declining to charge as requested in the defendants' eighth point. This was in substance, that if the jury believed that a certain item in the defendants' book to the credit of the plaintiff had been entered by their book-keeper without their knowledge or consent, they should disregard it altogether. The fact may have been very important as a question of evidence, to rebut the presumption arising from the entry, that the defendants had not known of it or consented to it; but if, notwithstanding there was proof that the item objected to was a proper entry to the plaintiff's credit, it was entirely immaterial whether it had been made with the knowledge or consent of the defendants or not. The learned judge below therefore committed no error in declining to charge as requested in this point.

Judgment reversed, and *venire facias de novo* awarded.