Commonwealth *v.* Kettering, Appellant.

Argued November 16, 1955. Before RHODES, P. J.,
HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN,
JJ.

*James Gregg,* with him *Vincent R. Smith,* for appellant.

*Joseph M. Loughran,* Assistant District Attorney,
with him *L. Alexander Sculco,* District Attorney and
*John K. Best,* Assistant District Attorney, for appellee.

OPINION BY HIRT, J., January 17, 1956:

The defendant was convicted of indecent assault, a
common law offense. *Com. of Penna. v. DeGrange,* 97
Pa. Superior Ct. 181, 185. The child involved was a
six-year old girl. The defendant has appealed from
the sentence imposed, contending that he is entitled
to a new trial because of prejudicial error in the admission of evidence and inadequacy in the charge of
the court on his defense of alibi.

There can be no doubt that the offense was committed by someone. Shortly after two in the afternoon of March 16, 1954, the child, whom we shall refer to as Marcia, on her return from school, reported to her mother in their home in Greensburg. About 4 o'clock she was given permission to cross the street where she roller skated with three other children in the neighborhood. She was accosted by a strange man on the sidewalk and in response to his suggestion went for a ride with him in his automobile. The criminal act was committed in the car, stopped at a rural school house about one-half mile south of Greensburg. The child was returned to Greensburg and was discharged from the automobile near her home. She, clutching a 50 cent piece which her assailant had given her, immediately went into the house and told her mother of her experience. The mother fixed the time of her arrival home at "shortly after five." The child reported that on the way home the man said he was "Doc Andrews" and told her that the car was a Cadillac. Although she could not spell, she recognized the word "Cadillac" in metal script on the right front side of the body of the car. She described the color of the car as two-tone green, dark green on top and light green body, but on cross-examination conceded that "it might have been light green all over." The defendant after his arrest was brought to the home of Marcia's parents on March 26, and there she on sight identified him as "Doc Andrews." She also identified the defendant as her assailant at the preliminary hearing and, again, in court at the trial. On March 26 when a police officer asked Marcia to look at defendant's Cadillac car she said that it was the one in which the offense was committed. She so concluded principally because of its color. However the two-tone paint job did not identify the car to the exclusion of others in the area. The local dealer from

whom defendant bought the car testified that he had sold 25 Cadillacs during the preceding three years with the same two-tone green paint combination.

Since the criminal act was proven and not contraverted, the issue before the jury was the identity of the defendant as the culprit. Regardless of Marcia's apparent intelligence she was but a six-year old child. A conviction, from necessity, may rest upon the uncorroborated testimony of a mere child, but the testimony of the child as to the identity of the assailant, because of the inherent possibility of error, must be open to the closest scrutiny by the jury. And in cases of sex perversion such as this where jurors, outraged by the loathsomeness of the offense are prone to convict, there is a duty on the trial judge to safeguard the rights of a defendant by presenting the issue of identity to the jury in a light as favorable to him as the testimony will admit.

If the alibi evidence in this case had been marshalled and submitted in apposition to the Commonwealth's evidence of identity a situation somewhat more favorable to the defendant would have been presented. Marcia's mother fixed the time and a period of about one hour within which the offense was committed. She gave Marcia permission to cross the street to play with neighboring children "about four o'clock in the afternoon." Marcia came home "shortly after five o'clock."

Defendant's home is on State Highway Route 80 six miles from Saltsburg and about 18 miles from Greensburg. He is a securities salesman associated with a brokerage house in Pittsburgh. He testified that after closing several sales of securities to customers on March 16, 1954, he went home about 2:30 in the afternoon and remained there the rest of the day. A carpet merchant who came to lay carpet which de-

fendant had bought testified that he saw the defendant in his home when he arrived there at 3 o'clock and that defendant was there when he completed his work about 6:30 that evening. Dr. Thomas Hadden owns property adjoining defendant's house which however he uses only as a summer home. He testified that at the close of a baby clinic conducted by him in the Grange Hall near Saltsburg on the afternoon of March 16, he made a call on one patient and then went to his summer home to inspect it; at approximately 4:30 he called on the defendant in his home and visited with him there until after 5 o'clock. Elwood Bish, another neighbor with whom defendant shared a mail box testified that he arrived at his home at 5 o'clock, on that day, and immediately brought defendant's mail to him and talked with him. Charles McKee, a security broker with offices in Pittsburgh came to defendant's home about 5:30 in response to defendant's invitation to dinner and remained until 11 p.m. There is an unusual cohesiveness in all of this alibi testimony because of the presence of the carpet man working on the premises. All of the above witnesses testified that they saw him there. And the date to which their testimony relates is definitely fixed. This was the second and final day that the carpet man was laying carpet at defendant's house. He testified that you can't get a customer to sign a note or a receipt until "the job is completed." In the presence of the witness McKee both defendant and his wife signed a bailment contract, covering deferred payments on the purchase price of the carpet, which was presented to them by the carpet man when he had completed his work about six o'clock that day. And the date of execution appearing on the writing which they signed is "Mar. 16, 54."

The court accurately but very briefly instructed the jury as to the general principles governing the defense

of alibi and the degree of proof required of the defendant to establish it. The defendant excepted to the instructions as inadequate but no additional instructions were given. The trial judge did review the testimony of all of the witnesses in his charge and clearly the alibi testimony, if true, would have established the innocence of the defendant. In general where this defense is interposed "The jury must also be instructed that 'the evidence in support of the alibi may, with other facts in the case, raise the reasonable doubt of guilt which entitles a defendant to an acquittal' ": *Commonwealth v. New*, 354 Pa. 188, 214, 47 A. 2d 450. *Commonwealth v. Jordan*, 328 Pa. 439, 446, 196 A. 10; *Commonwealth v. Stein*, 305 Pa. 567, 571, 158 A. 563. In the light of the defendant's persuasive alibi testimony in this case the failure of the trial judge to so instruct the jury in response to defendant's specific exception to the charge, was error.

There was error also in the admission of incompetent testimony and the trial judge's comment upon it which in our view was prejudicial and which together with the above inadequacy in the charge clearly entitled the defendant to a new trial. March 16, 1954, definitely was fixed as the date of the offense. On cross-examination the defendant was asked if he was in Jeannette on the *24th* of March. After defendant answered "I don't know" the Commonwealth in rebuttal *going to defendant's credibility* was permitted over objection to offer the testimony of two witnesses who said that they saw the defendant's Cadillac, license plate RV 457 in Jeannette on that date. Whether a fact inquired of on cross-examination is collateral is to be determined by its admissibility if offered by the cross-examining party as a part of his case. That is the test. *Hildeburn v. Curran*, 65 Pa. 59. The previous statement of a witness in conflict with his testi-

mony *as to a relevant matter* may always be shown as affecting his credibility. *Commonwealth v. Zervas,* 302 Pa. 510, 514, 153 A. 767. But a witness may be contradicted only on matters germane to the issue trying. Brown, Penna. Ev. 275. The question of defendant's presence in Jeannette on March 24, eight days after the alleged offense, was an irrelevant and purely collateral matter so far as disclosed by this record. Our Supreme Court has condemned the practice of permitting contradiction of matters foreign to the issue, in no uncertain terms, for the reason that thereby "the jury may be readily and greatly misled by it and induced to give a verdict fraught with the highest degree of injustice." Cf. *Commonwealth v. Petrillo,* 341 Pa. 209, 223 et seq., 19 A. 2d 288. The prejudice in the admission of the above testimony was aggravated by the fact that the trial judge in reviewing it in the charge misquoted the defendant by stating to the jury that defendant *denied* that he was in Jeannette on that day and when commenting on the credibility of witnesses, told the jury, "Sometimes you can tell by small things wherein lies the truth of whether a witness's testimony is to be believed or not to be believed." Thus incompetent testimony which did not rebut anything was allowed to convey the impression to the jury that defendant in his testimony was not entitled to be believed in any respect. Other inferences, improperly invited by the Commonwealth, were more serious. The Commonwealth's brief contains a recital of alleged facts entirely foreign to this record, which indicate that the real purpose of the testimony as to the presence of defendant in Jeannette on March 24 was to raise by innuendo the suspicion in the minds of the jury that this defendant was responsible for an alleged (but not proven) series of like offenses committed by someone in the Greensburg area which undoubtedly aroused pub-

lic indignation. If the defendant had been guilty of other like conduct the Commonwealth within the limitations of *Commonwealth v. Kline*, 361 Pa. 434, 65 A. 2d 348, might have cross-examined him on the subject and if similar sex offenses were denied the Commonwealth could have proved them as a part of its case. Here the Commonwealth by highly improper recitals in its brief, obviously for the purpose of prejudicing us in the disposition of this appeal, imputes the commission of a series of specific indecent assaults to the defendant. Based on these extraneous recitals, without a word of support in this record, the appellant has asked us to suppress the Commonwealth's brief. In the light of our disposition of this appeal we need not take that action although invited by the Commonwealth's brief submitted by the District Attorney. But we feel constrained to say that we will not countenance attempts such as this by either party to an appeal to influence this court in its decision by interpolating matters in a brief which in no way are supported by the record in the case. Such conduct is to be condemned particularly where the offending party is the District Attorney, a quasi-judicial officer. Cf. *Commonwealth v. Balles*, 160 Pa. Superior Ct. 148, 153, 50 A. 2d 729. This statement from the opinion in *Commonwealth v. Williams*, 309 Pa. 529, 535, 164 A. 532, is pertinent here: "We must again forcibly repeat 'That the district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice; . . . since he is invested with these grave responsibilities, he should, at all times, conduct the Commonwealth's case fairly [and] present it in an impartial manner . . ." *Commonwealth v. Cicere*, 282 Pa. 492, 128 A. 446.

The defendant may be guilty but his conviction on this record cannot stand.

Judgment reversed with a venire.

WRIGHT, J., concurs in the result.