364 A.2d 488

**COMMONWEALTH of Pennsylvania**

v.

**George E. WILLIAMSON, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**William GREEN, Jr., Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

140

John W. Packel, Asst. Public Defender, Chief, Appeals Div., Joseph D. Montgomery, III (Court-appointed), Philadelphia, for appellants.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

This opinion involves two separate appeals, arising from the joint trial of the instant appellants. The facts are identical and the appeals raise the same issue. We therefore address ourselves to both appeals herein.

On August 10, 1974, Catherine Chavis was upstairs in her home at 523 Fallon Street in Philadelphia, when she heard a voice calling from below. She came out of a room and saw two men proceeding up the stairs. The first man, later identified as appellant William Green, was carrying a sawed-off shotgun. Ms. Chavis turned, ran into her bedroom and locked the door. She then climbed out the bedroom window and dropped onto the

roof below. While on the roof, she heard her bedroom door being forced open. She entered her neighbor's house through a bedroom window and went downstairs and outside, where she was met by the police.

Three Philadelphia policemen accompanied Ms. Chavis back into her house where two guns, her pocketbook, and certain records were found to be missing from the bedroom. Ms. Chavis knew both of the intruders as being from the neighborhood. She went with the police to Green's house, approximately a block and a half away at 4930 Hoopes Street. Both appellants were found there, identified by Ms. Chavis, and arrested. Subsequently, the police obtained a warrant and made a thorough search, lasting approximately an hour and a half, of Green's residence. Mrs. Green, appellant Green's mother, was in the house when the police arrived and remained there throughout the search. The search did not reveal any of the missing items from Ms. Chavis' home but the police did find used hypodermic needles and a package containing at least 1,000 glassine bags.

The appellants were jointly tried before a judge, sitting without a jury. Both were found guilty of robbery,[1] criminal conspiracy,[2] unlawfully carrying a firearm without a license,[3] possessing instruments of crime[4] and burglary.[5]

■ The sole question presented in this appeal is whether the court below erred in refusing to declare a mistrial when the prosecuting attorney introduced the topic of certain drug-related paraphernalia which was discovered during the police search of the premises

1. 18 Pa.C.S. § 3701.
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 6108.
4. 18 Pa.C.S. § 907.
5. 18 Pa.C.S. § 3502.

where the appellants were found. This matter was first broached during the testimony of Mrs. Green, who was an alibi witness for the appellants. She stated that both Green and Williamson had been at her house during the time of the robbery. The following exchange took place during the cross-examination of Mrs. Green by the prosecuting attorney:

Q. Did you go with the officers when they searched your house; did you go throughout the house with them?

A. Yes.

Q. Did you see them search the rafters?

A. Yes, they took a mirror. I gave them a mirror. They took a big flashlight like this, and you have got to put it underneath the panel, and they could look up like this, that they turned over my trash.

Q. What did they find in the rafters?

A. Nothing, nothing but a baseball bat.

Q. They didn't find nothing?

A. No, no guns, no nothing.

Q. Are you sure they didn't find a large amount of glassine bags?

MR. MONTGOMERY: Objection.

THE COURT: Overruled.

THE WITNESS: No, I don't think so.

BY MR. CARPENTER:

Q. Are you sure they didn't find any hypodermic needles?

MR. MONTGOMERY: Objection.

THE COURT: Overruled.

THE WITNESS: I don't think so because they didn't. I would have said something about it.

BY MR. CARPENTER:

Q. But you were there?

A. Yes, but it was more than one officer. I had about 20, and I couldn't watch everyone.[6]

In rebuttal, a police officer present at the search testified for the Commonwealth. The prosecuting attorney conducted the following examination.

BY MR. CARPENTER:

Q. Did you participate in the search of the premises?

A. That's correct.

Q. Did you search the rafters in the basement?

A. Yes, sir, I participated in that part of the search.

Q. And what if anything had you recovered from there?

MR. HANFORD: Objection.

THE COURT: Overruled.

THE WITNESS: In the course of the search of the rafters, we found a couple of used hypodermic needles and a package, more like a cardboard container containing at least 1,000 glassine bags—

After this testimony by the police officer, counsel for the appellants joined in a motion for a mistrial, which was denied. We hold that the lower court's refusal to declare a mistrial was proper and we affirm the judgment of sentence entered below.

The appellants' assertion that a mistrial should have been granted, based on the testimony regarding the hypodermic needles and glassine envelopes found on the searched premises, rests on two separate arguments.

---

6. Only counsel for appellant Green objected to the above questions, directed to Mrs. Green on cross-examination, regarding the hypodermic needles and glassine bags. The analysis which follows in the body of this opinion, focusing on the rebuttal testimony offered by the Commonwealth, is also dispositive of any objection to the quoted cross-examination of Mrs. Green. For this reason we deem it unnecessary to discuss waiver doctrines which might preclude appellant Williamson from raising this issue on appeal.

First, it is alleged that the Commonwealth's evidence on this topic did not, in fact, rebut the testimony of the defendant's alibi witness, Mrs. Green. Citing the well-established proposition that a witness cannot be impeached on a collateral matter, appellants insist that this testimony was improperly admitted. The appellants' second argument is that the introduction of drug-related evidence in a prosecution for a separate offense is, regardless of relevance, so overwhelmingly prejudicial as to require a mistrial or, in this case, reversal of a conviction.

The frame of analysis applicable to the instant case is suggested in *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974). Referring to evidence of drug addiction introduced in a trial for robbery, this court stated that "before the [trial] court permits such testimony over objection, it should consider the inherently prejudicial nature of such testimony and carefully determine whether its probative value and need is sufficiently strong to justify its admission." 230 Pa.Super. at 235–36, 326 A.2d at 642.

We must, therefore, weigh the probative value of the disputed testimony against the possibility of prejudice to the appellants. Mrs. Green was an alibi witness, testifying that the appellants were at her house at the time when the robbery occurred. Her credibility was thus a matter of major importance at trial. The accuracy of the witness' observations, her awareness of the particular events which transpired in her house that day and her ability to recall such events were all relevant. If the witness was incorrect in her stated conclusion that the police found nothing in the rafters but a baseball bat, the finder of fact might also infer that she had been wrong in her belief that the appellants had been in the house at the time of the robbery. Mrs. Green testified that she was present when the rafters were searched and that *nothing* was found but a baseball bat. The particularity

of her testimony on this matter was not impaired by her later caveat that she "couldn't watch everyone."

Further, if the fact finder chose to believe that Mrs. Green lied when she denied knowledge of the attested results of the search, the possibility that she might lie to provide an alibi for her son and his friend would be apparent and could, at the very least, affect the weight accorded to her testimony. Considering these factors, we find the challenged testimony to be clearly relevant.

Appellants attempt to draw an analogy between the instant facts and the fundamental common law principle that evidence of a defendant's prior criminal activity cannot be introduced as substantive evidence of guilt of the present charge. This reasoning is inapplicable, however, as this court has specifically rejected "the argument that a reference to the drug addiction of the accused necessarily carries with it the inference that the accused has engaged in prior criminal conduct. *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974)." *Commonwealth v. Williams*, 230 Pa.Super. 72, 75, 327 A.2d 367, 368 (1974). No evidence as to the use or sale of narcotics by either of the appellants, other than the disputed testimony, was introduced at trial. Under these circumstances, especially in a nonjury trial, we cannot equate such testimony, offered for a legitimate purpose, with evidence of prior criminal conduct.

█ Concluding that the questioned testimony was relevant and was not so prejudicial as to require reversal *per se,* we must determine what prejudice, in fact, inured to these appellants. Here the trial judge, in his supporting opinion, states that "such evidence was not of such prejudicial nature as to influence the Court's decision as to the guilt or innocence of the defendant." We perceive no reason, on the record before us, to doubt this conclusion.[7]

7. Even if we found the testimony in the instant case to have been improperly allowed, which we do not, its admission would still

Our final inquiry, the result of which is somewhat foreshadowed by the preceding discussion, is whether the trial court abused its discretion in refusing the motion for mistrial. "The decision whether to grant a mistrial on the ground of prejudicial testimony is initially within the sound discretion of the trial court." *Commonwealth v. Koch,* 446 Pa. 469, 477, 288 A.2d 791, 795 (1972). It has often been held that, to require a mistrial, the situation must be such as to raise a fixed bias in the mind of the fact finder and thus to preclude a fair and objective verdict. *See Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71 (1975); *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669 (1974). The trial court found that the testimony involved herein did not create such prejudice or otherwise influence its verdict.

The judgment of sentence of the lower court is affirmed.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion in which JACOBS, J., joins.

SPAETH, Judge (concurring):

I cannot accept the majority's conclusion that the cross-examination of Mrs. Green and the subsequent "rebuttal" of the testimony thus elicited by the Commonwealth were proper. Nonetheless, applying the criteria formulated by this court in *Commonwealth v. Conti,* 236 Pa.Super. 488, 501, 345 A.2d 238, 245 (1975), I have concluded that the improper reception of the testimony in this non-jury trial was not prejudicial to appellants, and I therefore agree that the judgments of sentence should be affirmed.

not *necessarily* constitute reversible error. The verdict of a judge, sitting without a jury, need not be nullified merely as a consequence of exposure to prejudicial evidence. *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *see also Commonwealth v. Williams,* 222 Pa.Super. 340, 294 A.2d 758 (1972).

I

The majority acknowledges appellants' contention that Mrs. Green was improperly impeached on a collateral matter, but pretermits discussion of that issue and, relying upon *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974), proceeds immediately to balance the probative value of Mrs. Green's testimony against its prejudicial impact. I suggest that it is analytically premature to engage in the balancing process arguably (but I think in fact not) suggested by *Quarles*,[1] since the need to strike such a balance is obviated if it is initially determined that the cross-examination and rebuttal were improper.

I recognize that a party may present evidence to contradict testimony elicited by his own cross-examination of a witness. *Commonwealth v. Hickman*, 453 Pa. 427, 432, 309 A.2d 564, 567 (1973). However, this presupposes the propriety of the cross-examination. If a witness is improperly cross-examined concerning a collateral matter, the examiner is bound by the witness's answers and may not contradict them. *Hester v. Commonwealth*, 85 Pa. 139 (1878); *Hildeburn v. Curran*, 65 Pa. 59 (1870); 2 *G. Henry, Pennsylvania Evidence* § 802, at

1. *Quarles* provides scant support for the analytical framework endorsed by the majority. First, the court in *Quarles* explicitly declined to balance probative value against prejudicial effect since "no objection was made at trial, and the propriety of testimony was not attacked in the defendant's post-trial motions." 230 Pa. Super. at 235, 326 A.2d at 641. Second, the court expressed grave misgivings about the admission of evidence of drug addiction, observing that such evidence is " 'pregnant with prejudice.' " Finally, the testimony concerning the defendant's drug addiction in *Quarles* was relevant to the discrepancy in the defendant's physical appearance between arrest and trial, while in the instant case the evidence concerning the hypodermic needles and glassine envelopes is irrelevant to the offenses with which appellants were charged.

*Quarles* should be kept distinct from a case with an identical name that deals with issues unrelated to those presented by the instant case. *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974).

258 (4th ed. 1953). This rule is applicable to cross-examination designed, as in the instant case, to affect the credibility of a witness. *Commonwealth v. Graham*, 170 Pa.Super. 343, 347, 85 A.2d 632, 634 (1952).

The test of whether a matter inquired into on cross-examination is collateral is whether the examining party could prove the matter as part of his own case. *Commonwealth v. Fisher*, 447 Pa. 405, 413, 290 A.2d 262, 267 (1972); *Commonwealth v. Zervas*, 302 Pa. 510, 514, 153 A. 767, 768 (1931); *Farms Appeal*, 216 Pa.Super. 445, 451, 268 A.2d 170, 174 (1970). The Commonwealth cannot, on cross-examination, violate rules of evidence that restrict the presentation of its case-in-chief, *i. e.*, it cannot do indirectly what it could not do directly. *Commonwealth v. Burkett*, 211 Pa.Super. 299, 302, 235 A.2d 161, 162 (1967).

Viewed in light of these principles, it is apparent that the cross-examination of Mrs. Green concerned a collateral matter. The evidence of the discovery of the hypodermic needles and glassine bags could have permitted the fact-finder to infer that appellants were engaged in drug-related activity. The majority's assertion to the contrary is refuted by the decisional law. *See, e. g., Commonwealth v. Young*, 222 Pa.Super. 355, 358–59, 294 A.2d 785, 787 (1972) (circumstances, which included purchase by defendant of one thousand glassine envelopes from stamp shop, "were replete with facts which suggested that defendant was associated with the illicit drug trade"). Thus, through the cross-examination of Mrs. Green, the Commonwealth was able to introduce evidence of other criminal activity on appellants' part. Since it could not have presented such evidence in its case-in-chief, *see, e. g., Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955), the Commonwealth was bound by Mrs. Green's denials, and should have been precluded from presenting Officer Burke's rebuttal evidence.

The majority contends that the evidence was offered for the legitimate purpose of discrediting the alibi witness. As previously noted, however, the rule barring inquiry into collateral matters on cross-examination applies with equal vitality to an attack upon a witness's credibility. *Commonwealth v. Truitt*, 369 Pa. 72, 80, 85 A.2d 425, 429 (1951); *Commonwealth v. Steinberg*, 189 Pa. Super. 381, 385, 150 A.2d 131, 133 (1959); *Commonwealth v. Graham, supra.* Thus, for example, had appellants made an extrajudicial statement admitting their participation in the crime, the statement could have been introduced to contradict Mrs. Green's alibi testimony, since the statement would be independently admissible as an admission of appellants. *Commonwealth v. Tervalon*, 463 Pa. 581, 590, 345 A.2d 671, 676 (1975). Similarly, had Mrs. Green made a prior statement to the police disclaiming knowledge of appellants' whereabouts at the time of the crime, the statement could be introduced to discredit her alibi testimony. *Commonwealth v. Farrior*, 446 Pa. 31, 33, 35, 284 A.2d 684, 685, 686 (1971). *See also Commonwealth v. Kettering*, 180 Pa.Super. 247, 252–53, 119 A.2d 580, 583 (1956) (prior inconsistent statement). In short, there must be a basis for admissibility "independent of the contradiction." *Commonwealth v. Evans*, 190 Pa.Super. 179, 251, 154 A.2d 57, 94 (1959), *aff'd on the opinion below*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960). There was no basis in the instant case for introduction of the incompetent evidence concerning appellants' other criminal activity.

## II

The majority attempts to buttress its conclusions by stating that, assuming inadmissibility of the evidence, "[t]he verdict of a judge, sitting without a jury, need not be nullified merely as a consequence of exposure to prejudicial evidence." 243 Pa.Super. at 146, at 492 n. 7.

150

This assertion disregards our recent decision in *Commonwealth v. Conti, supra,* and our observation in that opinion that "in some instances due process requires that we not simply rely on the fiction of a judicial blindside." 236 Pa.Super. at 501, 345 A.2d at 245. In *Conti,* we [2] pointed to "two factors [that] will be considered of critical import" in determining whether a trial judge, sitting as trier of fact, should declare a mistrial after hearing incompetent evidence, *viz.,* "the inherently prejudicial quality of the specific evidence involved," and "the importance of the evidence to the particular case." *Id.*

Applying this test to the instant case, I do not think the judgments of sentence should be disturbed. Although the evidence of appellants' unrelated criminal activity posed a risk of "emotional impact," *id.,* the evidence, as the majority notes, was not explicitly and emphatically linked to appellants. The evidence of appellants' guilt, consisting of the detailed testimony of the victim, who had known both appellants for a considerable period of time, was convincing. Therefore, since the incompetent evidence was not "so prejudicial and so vitally important to appellant[s'] case that we cannot presume [the trial judge] succeeded [in disregarding the incompetent evidence]," *Conti, supra,* at 503, 345 A.2d at 246, I join in the affirmance of the judgments of sentence.[3]

---

2. JACOBS and PRICE, JJ., dissented.

3. *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975), does not undercut this court's analysis in *Conti,* and should be narrowly confined to its facts. In *Green,* the suppression judge found appellant's confession to be voluntary. At his non-jury trial, appellant again raised the voluntariness issue, as permitted by Pa. R.Crim.P. 323(j). The trial judge, who was different from the suppression judge and sat as trier of fact, found the confession involuntary, and stated that he had disregarded it in adjudging appellant guilty of murder in the second degree. Mr. Justice Pomeroy in his majority opinion observed (Manderino, J., filed a dissenting opinion in which Roberts, J., joined) that the two-step procedure contemplated by Rule 323 was approved by the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct.

HOFFMAN, Judge (dissenting):

Appellants contend that the court below erred in refusing to declare a mistrial when evidence was introduced showing that they were in possession of drug-related paraphernalia unrelated to the offenses with which they were charged. For reasons stated in *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975), and in my dissenting opinion in *Commonwealth v. Williams*, 230 Pa.Super. 72, 327 A.2d 367 (1974), I would reverse and grant a new trial.

This Court has recently held that a mistrial is required "when evidence is so prejudicial that we cannot assume that the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication." *Commonwealth v. Conti*, supra, 236 Pa.Super. at 495, 345 A. 2d at 242.

The possession or use of drugs is itself a crime. Thus, the introduction of this evidence in a trial for unrelated offenses is clearly prejudicial in a jury trial. As stated in *Commonwealth v. Conti*, supra at 499, 345 A.2d at 244, we cannot overlook "the fact that judges are subject to the same emotions and human frailties as affect all persons, lay jurors or not."

Accordingly, the judgment of sentence should be reversed and appellants granted a new trial.

JACOBS, J., joins in this dissenting opinion.

1774, 12 L.Ed.2d 908 (1964). Significantly, Mr. Justice Pomeroy noted that "[w]e are thus not faced with a situation where the same judge in the first instance determined both voluntariness and guilt." 464 Pa. at 562 and n. 2, 347 A.2d at 684 and n. 2.