J-S77005-17

2018 PA Super 40

COMMONWEALTH OF PENNSYLVANIA, 

        Appellee

        v.

KHAFRE RAHEEM JOHNSON,

        Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1128 MDA 2017

Appeal from the Judgment of Sentence Entered June 26, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000147-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.:          **FILED FEBRUARY 22, 2018**

Appellant, Khafre Raheem Johnson, appeals from the judgment of sentence of an aggregate term of 6-12 years' incarceration, imposed following his conviction for robbery, conspiracy, and related offenses. Appellant challenges the sufficiency of the Commonwealth's evidence supporting his identification as the perpetrator of these crimes. After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

Three witnesses testified in this case. First, the victim Kory Filson testified.[3] He testified that at 10:30 p.m. on December 2, 2015, he was walking to a gas station in the area of Jackson Street, Sunshine Alley, and Mount Rose Avenue. He described the area as well[ ]lit by street[]lights and a garage light. While

_____

[*] Former Justice specially assigned to the Superior Court.

Filson was walking, … Appellant and one other man approached him from behind.

> [3] Mr. Filson did have a previous unsworn falsification conviction in 2013.

Filson knew … Appellant before that night because he had attended middle school with … Appellant's older brother and because … Appellant was one or two classes behind Filson. In fact, Filson had almost instantly recognized … Appellant when he and the other man approached him.

The other man grabbed Filson from behind, and Appellant stood in front of Filson. Appellant pulled out a handgun and told Filson "to empty [Filson's] pockets."

During this incident, Appellant pointed the gun at Filson's midsection. Then, Appellant and the other man went through Filson's pockets and took all of the pockets' contents. For example, they took his wallet, cell phone, pocket[ ]knife, $100 in cash, credit cards, and a prescription. During the altercation, Filson had feared for his life.

In fact, during the altercation, Filson said Appellant's name and asked Appellant if he was serious, to which … Appellant responded[,] "he was dead serious." Afterwards, the two men ran down an alleyway, and Filson went several blocks to his home, where he called the police with a second cell phone that he had at home.

Officer Richard Morris ("Officer Morris") testified next. At the time, Officer Morris was a patrolman for Spring Garden Township, and he was working from 7:00 p.m. until 3:00 a.m. that night. At about 10:45 p.m., Officer Morris was dispatched for a robbery, and he met with Filson at South Albermarle Street.

That night, Filson walked Officer Morris through what had happened. For example, he took Officer Morris to the 700 block of Sunshine Alley, just North of Jackson Street, which is where Filson told the officer [that] the robbery occurred. Officer Morris described the lighting in that vicinity as "very good for an alley…. It's a residential area, it's densely residential, a lot of ambient lighting from the homes. I would say in an alley with the light being what it was, looking at your face from here and there, I'd have no problem identifying you…." During his testimony,

Officer Morris noted that he had met Filson before. Further, he explained that while Filson was normally an energetic and talkative person, his personality that night was "very somber, downtrodden, [and] he appeared scared to [the officer], beaten down, if you will."

Lastly, Appellant testified. Appellant stated that he did not know Filson, and that while he was in the middle school Filson referred to, he did not attend the high school that Filson described. Appellant stated he did not know where he was that night specifically, but he was not in the area that the robbery occurred. He pointed out that he lived on the other side of town and did not have any reason to be in Spring Garden Township or that part of town.[24]

> [24] During his testimony, Appellant acknowledged that he was adjudicated in 2013 for retail theft and pled guilty to theft by unlawful taking. He also acknowledged that in 2012 he pled guilty to receiving stolen property. These convictions were pointed out for *crimen falsi* purposes only during the trial.

Trial Court Opinion ("TCO"), 9/1/17, 2-6 (some footnotes omitted).

Police arrested Appellant on September 2, 2016. The Commonwealth charged him with two counts of robbery, 18 Pa.C.S. § 3701(a)(1)(ii) and (iv) (counts 1 & 3); one count of conspiracy to commit robbery, 18 Pa.C.S. § 903 (count 2); one count of theft by unlawful taking, 18 Pa.C.S. § 3921(a) (count 4); one count of receiving stolen property, 18 Pa.C.S. § 3925(a) (count 5); and one count of possession of firearm prohibited, 18 Pa.C.S. § 6105(a)(1) (count 6). Appellant proceeded to a non-jury trial on May 17, 2017. That same day, the trial court found him guilty on all counts except for the firearm offense. On June 26, 2017, the trial court sentenced Appellant to 6-12 years' incarceration at count 1, and a concurrent term of

5-10 years' incarceration at count 2. The court merged the remaining counts for sentencing purposes.

On July 5, 2017, Appellant filed a timely post-sentence motion, in which he sought a motion for judgment of acquittal on sufficiency grounds, and a motion for a new trial on weight-of-the-evidence grounds. The trial court denied Appellant's post-sentence motion on July 11, 2017. Appellant filed a timely notice of appeal on July 18, 2017. He filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on August 8, 2017. The trial court issued its Rule 1925(a) opinion on September 1, 2017.

Appellant now presents the following questions for our review:

I. Whether the Commonwealth failed to present sufficient evidence to convict Appellant of robbery when the Commonwealth only presented the unsubstantiated allegation of the alleged victim without any independent police investigation that indicated Appellant's involvement in any crime?

II. Whether the Commonwealth failed to present sufficient evidence to convict Appellant of criminal conspiracy to commit robbery when the Commonwealth only presented the unsubstantiated allegation by the victim without any independent investigation by the police indicating that Appellant agreed with any other person to commit any crime[?]

Appellant's Brief at 4.

Both of Appellant's claims concern the sufficiency of the evidence, for which our scope and standard of review are well settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused,

beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant asserts that there was insufficient evidence supporting his identity as the perpetrator of the robbery committed against the victim. Appellant essentially argues that the victim's testimony could not establish, by itself, his identity as the perpetrator of the robbery. This argument has no support in existing case law.

A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime. *See Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (holding evidence sufficient to establish the identity of the robber/burglar where "the complainant identified [the a]ppellant, in open court, as one of the men that entered his home"); *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction."). Thus, Appellant's attempts to enhance his argument by asserting that the Commonwealth failed to present any corroborating evidence to support the victim's in-court identification testimony does not establish that the identity evidence was

insufficient. Moreover, Appellant's assertion that the victim's testimony was contradicted by his own is irrelevant to our sufficiency analysis. "Variances in testimony … go to the credibility of the witnesses and not the sufficiency of the evidence." ***Commonwealth v. Galloway***, 434 A.2d 1220, 1222 (Pa. 1981). Accordingly, we conclude that Appellant's first claim lacks merit.

Next, Appellant asserts that the evidence was insufficient to establish the existence of a conspiracy between himself and the other individual who perpetrated the robbery of the victim. He argues that the only evidence of a conspiracy came through the victim's testimony, and that such testimonial evidence is necessarily insufficient to prove the elements of conspiracy. Essentially, Appellant rehashes his first sufficiency argument to attack the explicit elements of conspiracy.

The Crimes Code defines the offense of conspiracy, in pertinent part, as follows:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> > …
>
> **(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such

conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903. Simplified, this requires proof of three elements: 1) an agreement, 2) shared criminal intent, and 3) an overt act. ***See Commonwealth v. Murphy***, 795 A.2d 1025, 1037–38 (Pa. Super. 2002). Moreover,

> [t]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

***Id.*** at 1038 (quoting ***Commonwealth v. Johnson***, 719 A.2d 778, 784-85 (Pa. Super. 1998) (*en banc*)).

Turning to Appellant's claim, we again reject the notion that a single witness's testimony, alone, cannot be sufficient to establish every element of a criminal offense; it has no basis in constitutional, statutory, or case law.[1]

_____

[1] Notably, Appellant makes no attempt to present this Court with case law suggesting otherwise.

To the contrary, a solitary witness's testimony **may** establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference.

As to the content of a victim's testimony, this Court has repeatedly indicated that such testimony, if believed by the fact-finder, **may** be sufficient to establish all the elements of a sexual offense.

> In **Commonwealth v. Gabrielson**, … 536 A.2d 401 ([Pa. Super.] 1988), this [C]ourt held that the uncorroborated testimony of a rape victim, if believed by the jury, is sufficient to support a rape conviction and no medical testimony is needed to corroborate a victim's testimony if the testimony was rendered credible by the jury. **See also** [**Commonwealth v.**] **Trimble**, [615 A.2d 48, 50 (Pa. Super. 1992)] (where a five-year-old victim's testimony that defendant placed his "weiner," penis, in her "tooter," vaginal area, established penetration and supported the rape conviction); **see also Commonwealth v. Kunkle**, … 623 A.2d 336, 338 ([Pa. Super.] 1993) (holding that uncorroborated testimony of the sex offense victim may be sufficient to establish the guilt of the accused); **Commonwealth v. Cody**, … 584 A.2d 992 ([Pa. Super.] 1991) (holding that sex offense victim's testimony alone provided sufficient evidence to establish defendant's guilt of involuntary deviate sexual intercourse, indecent assault, and corruption of minors beyond a reasonable doubt); **Commonwealth v. White**, … 491 A.2d 252, 258 ([Pa. Super.] 1985); **Commonwealth v. Stoner**, … 425 A.2d 1145 ([Pa. Super.] 1981) (holding that the uncorroborated testimony of a 12–year–old victim was sufficient to establish defendant's guilt in a prosecution for statutory rape, involuntary deviate sexual intercourse, and corrupting morals of a minor).

**Commonwealth v. Poindexter**, 646 A.2d 1211, 1214 (Pa. Super. 1994).

The Crimes Code specifically expresses this principle in the context of sexual offenses. **See** 18 Pa.C.S. § 3106 ("The credibility of a complainant of an offense under this chapter shall be determined by the same standard as

is the credibility of a complainant of any other crime. ***The testimony of a complainant need not be corroborated in prosecutions under this chapter.*** No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.") (emphasis added). However, this Court is not aware of any case law suggesting that the principle itself does not apply across the whole spectrum of criminal offenses. There is no universal, *per se* rule that a solitary witness's testimony is incapable of providing sufficient evidence of the commission of a crime.

Support for this principle in Pennsylvania case law is not merely confined to the realm of sexual offenses within the scope of 18 Pa.C.S. § 3106. For instance, despite recognizing the inherent credibility issues that arise with the testimony of accomplices, our Supreme Court has held that "guilt or innocence may be predicated on uncorroborated testimony of an accomplice." ***Commonwealth v. Hudson***, 414 A.2d 1381, 1385 (Pa. 1980). It would be a strange result if an accomplice to a crime could render sufficient testimony to convict, without any corroboration, but a victim of a crime could only render sufficient testimony when a sexual offense was involved.

Section 3106 became effective in 1976. Nevertheless, the principle contained therein predated the legislative mandate, suggesting that the statute merely codified, for a specific category of offenses, an existing legal maxim that applied more broadly. For instance, in ***Commonwealth v.***

*Kettering*, 119 A.2d 580 (Pa. Super. 1956), this Court recognized that "[a] conviction, *from necessity*, may rest upon the uncorroborated testimony of a mere child…." *Id.* at 581 (emphasis added). While the *Kettering* Court went on to caution that a factfinder should treat such testimony with great scrutiny, nothing in the opinion suggested that, if ultimately believed by the factfinder, the testimony was patently insufficient because it was uncorroborated by other evidence, testimonial or otherwise. Although *Kettering* did involve sexual misconduct, nothing in that decision suggested that the rule expressed by the Court was limited to sexual offenses.

This rule was applied outside the context of sex offenses and accomplice testimony in *Commonwealth v. Davis*, 132 A.2d 408 (Pa. Super. 1957). In that case, Charles Hanner, a heroin addict, provided the only testimony against Davis. He told the jury that Davis had delivered heroin to him in July of 1954. The substance was "properly identified by his testimony" as Hanner had testified to "his reaction when it was injected into his blood stream." *Id.* at 409. This Court held that "contrary to [Davis]'s contention, the uncorroborated testimony of Hanner in this case was sufficient to support [Davis]'s conviction of the unlawful possession and sale of narcotics." *id.* (relying on *Commonwealth v. Aikens*, 118 A.2d 205 (Pa. Super. 1955)).

In *Aikens*, the defendant was convicted of drug trafficking offenses under similar circumstances:

The Commonwealth's case depended upon the testimony of a drug addict. This witness testified that she had used heroin daily over a long period of time; that she knew the effect of it; and that the substance purchased by her from [Aikens] gave her the effect of heroin. She further testified that she was a drug addict; and that she was under sentence for the use and possession of heroin which she had purchased from [Aikens]. The witness also testified that she had known [Aikens] for a number of years and that [Aikens] gave her heroin from time to time in 1953 until she became addicted. She began purchasing heroin from [Aikens] in November, 1953, and thereafter purchased on the average a bag of heroin a day, including the months of November and December, 1954.

[Aikens] testified in her own behalf, and denied that she ever sold, gave or delivered any drugs to the Commonwealth's witness. [Aikens] claimed that the Commonwealth's witness had not told the truth about [Aikens] because of an alleged incident which occurred in the fall of 1953 over a small revolver. [Aikens] said the witness asked her to hide the gun but she refused, and that this was the cause of the witness' antagonistic attitude.

*Aikens*, 118 A.2d at 206–07.

On appeal, *inter alia*, Aikens claimed that a drug addict's uncorroborated testimony was insufficient to sustain her conviction. The *Aikens* Court rejected this claim, indicating that any defects in the credibility of a witness was "for the determination of the jury or a judge sitting without a jury." *Id.* at 208. The Court then held that: "If the trier of fact, who sees and hears the witness, is satisfied that the witness was testifying truthfully, even though a drug addict, then such testimony may be sufficient to warrant a conviction of a defendant for the sale of drugs." *Id.*

Synthesizing these cases, we hold that the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense,

so long as that testimony can address and, in fact, addresses, every element of the charged crime. There may be certain instances where particular elements of certain crimes fall outside the scope of this general rule,[2] but no such elements are involved in the case at hand. Moreover, our holding should not be understood to affect, whatsoever, the **weight** a factfinder assigns to uncorroborated testimony of a solitary witness. Such a circumstance should be a significant, but not a dispositive factor when assessing credibility. Our decision today concerns only claims made under the auspices of a challenge to the sufficiency of such evidence.

Turning back to the particulars of the case at hand, the trial court indicates that:

> Viewed in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence to find Appellant guilty of [c]onspiracy to [c]ommit [r]obbery. Here, overt acts were committed, for example when Appellant pointed the gun at [the victim] during the course of a theft and when Appellant and the other man took the contents of [the victim]'s pockets.
>
> The circumstances of the robbery clearly show that there was an agreement to commit the robbery based on the circumstances, including … Appellant's and other man's acts during the robbery of [the victim]. Again, given all the evidence and testimony, this [c]ourt found [the victim]'s testimony to be unbiased and more credible than Appellant's testimony. Therefore, there was sufficient evidence to find Appellant guilty of [c]onspiracy to [c]ommit [r]obbery.

_____

[2] We leave it for future decisions to determine which offenses contain elements that fall outside the general rule.

TCO at 10. We agree. The victim's testimony regarding Appellant's and his cohort's behavior during the robbery was sufficient to show a shared intent and implicit agreement to commit a robbery, as well as multiple overt acts perpetrated in furtherance of that conspiracy. Accordingly, Appellant's second claim also lacks merit.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2018