J-A24009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WELDON LUCAS | : | No. 2248 EDA 2018 |

Appeal from the Order Entered July 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0016035-2008

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **Filed: February 7, 2020**

The Commonwealth appeals from the post-conviction court's July 2, 2018 order granting Appellee, Weldon Lucas, a new trial based on the ineffectiveness of his trial counsel. After careful review, we reverse the court's order and reinstate Lucas's judgment of sentence.

This Court previously set forth the facts and procedural history of Lucas's underlying convictions, as follows:

> On October 7, 2008, Lucas intervened to protect his friend Shonda when she was being threatened by her boyfriend, Hamski, who had beaten her on earlier occasions. Lucas and Hamski got into a fight that ended when others pulled the two men apart. The complaining witness in this case, Alvin Morris…, was a friend of Hamski's and saw the fight.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The following day, after Lucas finished work…, he went to his sister Tonya's house where he waited in his car for her to get home safely. He was concerned for Tonya's safety, fearing potential retaliation for the fight of the previous day. He talked with his friend, Ricky Myers, while he waited. Lucas heard a noise and noticed bright flickering lights in Tonya's house. Both men rushed inside, discovered a number of homemade Molotov cocktails had been lit and thrown in through the window, and quickly put them out so the house would not go up in flames. Lucas and Ricky Myers immediately went in search of the culprit. Moments later, Ricky Myers encountered Alvin Morris in an area near Tonya's house and shouted to Lucas to come over to where they were standing. Lucas subsequently shot Morris eleven times.

Trial Court Opinion, 5/3/11, at 1-2.

Lucas was arrested and charged with attempted murder, conspiracy to commit murder, aggravated assault, reckless endangerment, possession of instruments of crime ("PIC"), firearms not to be carried without a license, possession of a firearm by a person prohibited, and carrying a firearm on the public streets of Philadelphia. Lucas pled not guilty and proceeded to a jury trial.

During the jury's deliberations, the trial judge, the Honorable Lisa M. Rau, was called away to fulfill a longstanding teaching obligation in San Francisco. As a result, the Honorable Ramy Djerassi filled in for her for the purpose of responding to any questions presented by the jury. On May 24, 2010, the jury asked the following question: "Is Charge Number 2 'Criminal conspiracy F-1' synonymous with 'conspiracy to commit murder'?" Having consulted with Judge Rau, and [having] received the agreement of both counsel, Judge Djerassi instructed the jury, in pertinent part, as follows:

The defendant is charged with conspiracy to commit murder and/or aggravated assault. So any suggestion otherwise on Paragraph One of the written jury charges was a typographical error. So it is conspiracy to commit murder and/or aggravated assault.

N.T. Trial, 5/24/10, at 12.

Lucas was found guilty of reckless endangerment, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia and criminal conspiracy. The jury did not specify whether the conspiracy conviction related to murder or aggravated assault. Lucas was acquitted of the remainder of the charges, including attempted murder and aggravated assault.

*Commonwealth v. Lucas*, 368 EDA 2011, unpublished memorandum at 1-3 (Pa. Super. filed Feb. 8, 2012) (brackets omitted).

At Lucas's subsequent sentencing hearing, the Commonwealth sought application of a 10-year, mandatory-minimum sentence for Lucas's conspiracy offense under 42 Pa.C.S. § 9714(a)(1) (requiring a 10-year, mandatory-minimum sentence for any person convicted of a second "crime of violence"). Although defense counsel conceded that the mandatory term was applicable, the trial court refused to apply that sentence, instead imposing a term of 11½ to 23 months' incarceration for Lucas's conspiracy conviction. The Commonwealth timely appealed, and this Court vacated Lucas's sentence and remanded for the court to impose the mandatory term required by section 9714(a)(1). The trial court did so on September 9, 2016.

Lucas then filed a timely direct appeal, asserting several challenges to the court's jury instructions, including a claim that the trial court erred by instructing the jury that he could be found guilty of conspiracy to commit aggravated assault, when he had only been charged with conspiracy to commit murder. Notably, the trial court agreed with Lucas that it had erred in providing this instruction, and that a new trial was warranted. *See* Trial Court Opinion, 12/30/16, at 4-5. Nevertheless, this Court affirmed, concluding that Lucas had waived his jury instruction claims because his

- 3 -

counsel never objected to the at-issue instructions. *See Commonwealth v. Lucas*, No. 3011 EDA 2016, unpublished memorandum at 4-6 (Pa. Super. filed Jan. 26, 2018).

On March 5, 2018, Lucas filed a timely PCRA petition, contending that his trial counsel was ineffective for failing to object to two errors in the court's jury instructions: (1) the court's failure "to specify, in its [c]onspiracy charge, that in order to find [Lucas] guilty[,] the jury must find that he 'intentionally and with malice attempted to cause the death of another person'"; and (2) the court's improper instruction to the jury that Lucas was "charged with conspiracy to commit murder and/or aggravated assault." PCRA Petition, 3/5/18, at 3 (unnumbered). On May 14, 2018, the Commonwealth filed an answer to Lucas's petition. Lucas and the Commonwealth agreed that no evidentiary hearing was necessary. On July 2, 2018, the trial court granted the petition, vacated Lucas's judgment of sentence, and ordered a new trial.

The Commonwealth filed a timely notice of appeal, as well as a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 26, 2018, the PCRA court filed a Rule 1925(a) opinion. Herein, the Commonwealth states one issue for our review: "Did trial counsel, the Defender Association of Philadelphia, commit constitutionally ineffective assistance by agreeing to charge the jury on the lesser-included offense of conspiracy to commit aggravated assault, where [Lucas] was fully apprised of the applicable evidence and elements, and where the charge succeeded in reducing [Lucas's] potential liability?" Commonwealth's Brief at 2.

Preliminarily, we observe that,

> "[o]n appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Edmiston***, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." ***Commonwealth v. Koehler***, … 36 A.3d 121, 131 ([Pa.] 2012) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." ***Commonwealth v. Spotz***, 610 Pa. 17, 18 A.3d 244, 259 (2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." ***Id.***

***Commonwealth v. Medina***, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (*en banc*).

Additionally, where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Here, the PCRA court concluded that Lucas is entitled to a new trial based on his counsel's failure to object to following three errors committed by the trial court: (1) the erroneous instruction "that [] Lucas could be found guilty of conspiracy to commit aggravated assault when he was never charged or arraigned on that crime[;]" (2) the court's failure "to properly instruct the jury on the specific intent required to find [Lucas] guilty of either conspiracy to commit murder or conspiracy to commit aggravated assault[;]" and (3) the court's "recording the verdict when the jury did not specify the underlying crime that [] Lucas conspired to commit." PCRA Court Opinion, 12/30/16, at 4-5 (footnotes omitted). For the reasons that follow, we disagree with the PCRA court that any of these purported errors necessitates a new trial.

First, the PCRA court found that a new trial is warranted because Lucas's counsel acted ineffectively by failing to object to the instruction that Lucas could be convicted of conspiracy to commit murder **and/or aggravated assault**. In his petition, Lucas contended that this instruction improperly permitted the jury to convict him of an offense for which he was not charged, thereby prejudicing him by depriving him of notice and the opportunity to defend against that charge. **See** PCRA Petition at 4 (unnumbered). On appeal, he elaborates that his "trial strategy was geared toward defending against the allegation that he [c]onspired to [m]urder the victim[,]" not that he conspired to commit aggravated assault. Lucas's Brief at 9. Therefore,

Lucas insists that the court's adding the conspiracy to commit aggravated assault charge, without any objection by his counsel, "rendered his trial strategy ineffective…." *Id.* Accordingly, Lucas argues that the PCRA court correctly concluded that his counsel acted ineffectively, and properly granted him a new trial.

In response, the Commonwealth maintains that Lucas failed to demonstrate any error in the court's instruction, nor that he was prejudiced by counsel's failure to object to it. The Commonwealth stresses that,

> "[t]he settled law in Pennsylvania has been that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged." *Commonwealth v. Sims*, 919 A.2d 931, 938 (Pa. 2007). "As long as the conviction is for a lesser-included offense, the defense will have been put on notice of the charges against him and can adequately prepare a defense." *Commonwealth v. Reese*, 725 A.2d 190, 191 (Pa. Super. 1999) (citation omitted). Conspiracy to commit aggravated assault [is] a lesser-included offense of conspiracy to commit murder. *See Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994) (aggravated assault is a lesser-included offense of attempted murder).

Commonwealth's Brief at 17-18.

The Commonwealth's argument is convincing. In *Sims*, our Supreme Court upheld Sims' conviction for the uncharged offense of attempted escape, concluding it was a lesser-included offense of the charged crime of escape. The Court explained that permitting convictions for uncharged, lesser-included offenses "promotes judicial economy, avoids inconsistent results, and enhances the quality of jury deliberations by assuring that factfinders, informed of the option of convicting of related offenses, focus their attention

on the presence or absence of those elements that distinguish the greater or lesser offenses." **Sims**, 919 A.2d at 938 (internal citations and quotation marks omitted). However, the **Sims** Court recognized that, "[a]lthough Pennsylvania has consistently approved of the doctrine, the more difficult question has always been determining what constitutes a lesser-included offense." **Id.** To this end, the Court adopted the Model Penal Code's definition of 'lesser-included offense,' which "identifies three situations in which a defendant may be convicted of an offense included in the offense charged…." **Id.** at 940. The Model Penal Code states:

> (4) **Conviction of Included Offense Permitted.** A defendant may be convicted of an offense included in an offense charged in the indictment [or the information]. An offense is so included when:
>
> > (a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> >
> > (b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or
> >
> > (c) it differs from the offense charged only in respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
>
> MODEL PENAL CODE § 1.07(4) (alteration in original).

**Id.**

In the present case, the crime of conspiracy to commit aggravated assault constitutes a lesser-included offenses of conspiracy to commit murder under the 'statutory elements approach' of section 1.07(4)(a). **See id.**

(stating that section 1.07(4)(a) "reflects the statutory element approach" to defining a lesser-included offense). Both offenses require proof of: "1) an agreement, 2) shared criminal intent, and 3) an overt act." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted). While the criminal intent between the two crimes differs, our Supreme Court has held that "the intent necessary to establish the offense of … murder — specific intent to kill — is greater than and necessarily includes the intentional, knowing, or reckless infliction of serious bodily injury, the intent required for aggravated assault." ***Anderson***, 650 A.2d at 24. Thus, because the crime of conspiracy to commit aggravated assault is proven by evidence of the same or less than all the facts required to establish the commission of conspiracy to commit murder, it constitutes a lesser-included offense under section 1.07(4)(a).

Alternatively, we also find the definition set forth in section 1.07(4)(c) to be applicable to the at-issue offenses. Specifically, conspiracy to commit aggravated assault differs from conspiracy to commit murder only in the respect that a less serious injury or risk of injury to the victim (serious bodily injury, rather than death) suffices to establish the commission of conspiracy to commit aggravated assault. In addition, conspiracy to commit aggravated assault differs from conspiracy to commit murder only in the fact that a lesser culpability can establish its commission. ***See id.*** Accordingly, conspiracy to commit aggravated assault also meets the definition of a lesser-included offense of conspiracy to commit murder under section 1.07(4)(c).

In sum, we conclude that the court did not err by instructing the jury that it could convict Lucas of the lesser-included offense of conspiracy to commit aggravated assault. Thus, Lucas's claim that his counsel should have objected to that charge lacks arguable merit.

Additionally, Lucas's contention that he was prejudiced because he did not have notice or an opportunity to defend against the charge of conspiracy to commit aggravated assault clearly fails under the rationale of **Sims**. **See Sims**, 919 A.2d at 940-41 ("The defendant does not need separate notice to defend against [a lesser-included offense under section 1.07(4)(a)] because the defense that he prepares against the offenses charged will necessarily attempt to refute the Commonwealth's evidence of the lesser offenses."); **id.** at 941-42 ("[B]y charging [a defendant] with the more serious offense, the Commonwealth has given the defendant the information that he needs to choose and tailor his defense strategy. Accordingly, [s]ection 1.07(4)(c) likewise is consistent with a defendant's right to due process."). Moreover, as the Commonwealth points out, Lucas's actual "defense to the shooting of Mr. Morris in no way depended on the legal distinction between conspiracy to commit murder and conspiracy to commit aggravated assault." Commonwealth's Brief at 20. The Commonwealth explains:

> From opening to closing, and from [Lucas's] own mouth on the witness stand, the defense claim was that it was [Lucas's] friend who was the shooter, that [Lucas] had gone out with the friend…[,] but that [Lucas] had no idea his friend was carrying a gun or would actually shoot anyone. The defense, in short, was that [Lucas] was essentially a bystander who did not conspire to injure, let alone kill, the victim. Under these circumstances,

- 10 -

[Lucas] is at a loss even to postulate any reason why counsel would have wanted to object to the court's legally correct charge on conspiracy.

*Id.* at 20-21. We agree with the Commonwealth's analysis.

We also agree with the Commonwealth that Lucas's "argument that he was unfairly exposed to unforeseen elements … is simply untrue." *Id.* at 18. The Commonwealth stresses that,

[a]ll elements of conspiracy to commit aggravated assault were contained within the crimes charged: attempted murder, aggravated assault, and conspiracy. And all of these elements related to a single victim and a single set of facts: the testimony of the Commonwealth's witnesses that [Lucas] set out to shoot Mr. Morris and acted with another person in doing so. Under settled law, he cannot claim any lack of notice.

*Id.*

It is clear from the Commonwealth's argument, the record before us, and the case law discussed *supra*, that the trial court's instruction that Lucas could be convicted of conspiracy to commit aggravated assault was not improper and it did not prejudice Lucas, as he had adequate notice and opportunity to defend against that lesser-included offense. Consequently, Lucas failed to demonstrate that his trial counsel acted ineffectively by not objecting to that instruction, and the PCRA court erred by granting him a new trial on this basis.

We next conclude that the PCRA court erred by basing its grant of a new trial on a conclusion that Lucas's counsel was ineffective for not objecting when "the [c]ourt failed to properly instruct the jury on the specific intent required to find [Lucas] guilty of either conspiracy to commit murder or

- 11 -

conspiracy to commit aggravated assault...." PCO at 5 (footnote omitted). In Lucas's petition, his entire argument on this point was as follows:

> Although the jury was instructed that [Lucas] was charged with [c]riminal [c]onspiracy to commit [m]urder, the [c]ourt failed to specify, in its [c]onspiracy charge, that in order to find [Lucas] guilty[,] the jury must find that he "intentionally and with malice attempted to cause the death of another person." (**See** Exhibit 3 - Bills of Information). Counsel for [Lucas] failed to object or ask for a more specific instruction on the charge of [c]riminal [c]onspiracy.

PCRA Petition at 3.

Notably, Lucas did not mention the court's failure to instruct on the intent necessary for conspiracy to commit aggravated assault; thus, we agree with the Commonwealth that the PCRA court erred by *sua sponte* raising that issue. **See** Commonwealth's Brief at 23 n.8.

The Commonwealth also points out that Lucas "failed to show the necessary prejudice for his ineffective assistance claim." **Id.** at 24. It is apparent from the above-quoted portion of Lucas's petition that he offered no discussion of how he was prejudiced by the omission of a specific-intent instruction regarding conspiracy. **See Commonwealth v. Spotz**, 84 A.3d 294, 320 (Pa. 2014) ("[T]o establish prejudice from trial counsel's failure to object to the challenged portion of the ... charge, [a petitioner] must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.") (citation omitted). As the Commonwealth stresses, the jury convicted Lucas of conspiracy generally; thus, we cannot presume, as does Lucas and the PCRA court, that he was

convicted of conspiracy to commit murder, which requires a specific intent to kill.[1] Lucas could have instead been convicted of conspiracy to commit aggravated assault, which was the crime for which he was ultimately sentenced. If so, then the court's omission of an instruction on specific intent to kill would not have changed the outcome of the trial. Again, Lucas offered no argument in his PCRA petition regarding how, under the unique circumstances of this case, the jury's verdict would have been different, had his counsel objected to the court's failure to provide a specific-intent instruction for conspiracy. Therefore, he failed to demonstrate prejudice, and the PCRA court erred by granting him a new trial.

Order reversed. Judgment of sentence reinstated. Jurisdiction relinquished.

Judge Dubow joins this memorandum.

Judge Colins notes his dissent.

---

[1] We reiterate that Lucas did not object to the court's recording the jury's general verdict on conspiracy, without specification of the object crime. The PCRA court concluded that Lucas's counsel was ineffective for this failure. *See* PCO at 5. However, we do not see this claim raised anywhere in Lucas's PCRA petition. Therefore, the court erred by *sua sponte* finding that counsel acted ineffectively in this regard. We observe that this Court previously chastised this trial/PCRA court for raising errors *sua sponte*, concluding that the court was effectively "engag[ing] in what amounts to advocacy on behalf of Lucas." *See Lucas*, No. 368 EDA 2011, unpublished memorandum at 6 n.12. As we stressed in our prior decision, "*[s]ua sponte* consideration of issues deprives counsel of the opportunity to brief and argue the issues and the court of the benefit of counsel's advocacy." *Id.* (citing *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/20