J-S23024-25

**\*/NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMEL JOSEPH WRIGHT | : | |
| | : | |
| Appellant | : | No. 2933 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 20, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002775-2022

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 28, 2025**

Jamel Joseph Wright (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence entered following his conviction of criminal attempt (homicide), and two counts of aggravated assault.[1] Appellant's counsel, Arley L. Kemmerer, Esquire (Counsel), has filed an application to withdraw as counsel, and an accompanying brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful consideration, we grant Counsel's application to withdraw and affirm Appellant's judgment of sentence.

The trial court summarized the relevant history underlying this appeal:

On June 1, 2022, the victim, William Baglivo [(Mr. Baglivo]), was traveling home from work on his bicycle through the streets of

_____

[1] 18 Pa.C.S.A. §§ 901 (2501), 2702(a)(1) & (4).

Allentown. As he approached the intersection of 2nd and Hamilton Streets, a well-traveled junction, he was suddenly ambushed by [] Appellant. Mr. Baglivo almost immediately "felt the heat of the knife or [Appellant] approaching, but I knew something wasn't right." [N.T., 11/16/23, at 91.] He jumped from his bike and attempted to create distance [between himself and] Appellant, who was a complete stranger to him. He observed [] Appellant with a "bodega knife" in his hand, and that "he was mumbling[,] this is for Tonto or Tito…." [*Id.* at 92.] Within moments, [] Appellant abandoned his attack, then "[got] his 40 and walk[ed] back down the street," leaving the scene. At that time, Mr. Baglivo noticed that he was "bleeding out of [his] chest. It was shooting. It was making a hissing sound. … Shooting through my shirt." [*Id.* at 107.] [Mr. Baglivo] called the mother of his child and told her that he was "just stabbed by a stranger." [*Id.* at 107-08].

Several Good Samaritans took action. At least one came to the aid of Mr. Baglivo until police and EMS arrived. Another gentleman[, Cornelius Thomas (Mr. Thomas),] who was driving his work truck[,] witnessed the assault and called 911. [N.T., 11/15/23, at 117.] [Mr. Thomas] then followed [] Appellant as [Appellant] fled the scene, reporting [their] location to dispatch along the way. When police arrived on scene, [Mr. Thomas] was able to direct them to where [] Appellant was hiding in bushes behind a nearby used car lot. As police investigated behind the car lot, [] Appellant emerged in front of the business, where [Mr. Thomas] attempted to apprehend [] Appellant until police reemerged and detained him.

Trial Court Opinion, 12/16/24, at 1-2 (footnotes omitted; some citations from footnotes added to body; capitalization modified).

The trial court further described the injuries sustained by Mr. Baglivo:

Mr. Baglivo was rushed by ambulance to the hospital. Upon arrival, he was "breathing quickly. His heart was racing …." Based on [Mr. Baglivo's] presentation, the treating surgeon concluded that Mr. Baglivo was suffering from at least a lung injury, and potentially a heart injury. He also had air building up in his chest. His condition was "life threatening" and necessitated a "level one trauma activation[,] ... [the] highest level of trauma activation." [N.T., 11/16/23, at 39.] His injuries also triggered a "code red" in the hospital: [The treating surgeon stated,] "[A] code red in our

hospital signifies an emergency operation is about to happen. … [E]ssentially what we are saying when [we make a code red designation] is this is immediately life threatening and we need to move as rapidly as possible to treat this person." [*Id.* at 21-22.]

Once in surgery, Mr. Baglivo's wound was observed to be "a stab wound to the left chest … approximately 3 centimeters." The wound was "around the fourth rib space …. [T]he reason that that area is so important is all of those vital organs … they're really focused around the fourth rib space." [*Id.* at 27.] A chest tube was inserted to release the buildup of blood and air from the lung injury, and [Mr. Baglivo's] heart was examined for injury. This involved a "pericardial window" procedure. An incision was made to Mr. Baglivo's chest up to the sternum, and then his diaphragm was cut to reveal the sac containing his heart. An incision was made to the sac to reveal the heart. [*Id.* at 33-35.] No injury was found to the heart, but "given the location [of the wound] and given the lung injury," the knife was "on the scale of millimeters" away from striking the heart. [*Id.* at 37.] … Prior to the conclusion of the surgery, Mr. Baglivo continued to exhibit air in his chest, so a second chest tube was inserted. [*Id.* at 38.] [Mr. Baglivo's] injuries required a few weeks' stay in the hospital, and he continues to deal with long-lasting effects of the trauma, both physically and mentally.

Trial Court Opinion, 12/16/24, at 3-4 (footnotes omitted; citations from footnotes added to body; capitalization modified).

Following a trial, a jury convicted Appellant of the above-described charges. The trial court ordered the preparation of a pre-sentence investigation report. On May 20, 2024, the trial court sentenced Appellant to an aggregate prison term of 18-36 years. Appellant filed no post-sentence motions or notice of appeal.

Following a timely-filed petition under the Post Conviction Relief Act ("PCRA"),[2] the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a *nunc pro tunc* notice of appeal on October 31, 2024. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. On November 25, 2024, Counsel filed a statement of her intention to file an **Anders** brief in lieu of a concise statement. **See** Pa.R.A.P. 1925(c)(4) (permitting counsel to file a statement of intention to withdraw from representation, in lieu of filing a concise statement of errors).

We first address Counsel's application to withdraw from representation. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (citation omitted)).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

_____

[2] 42 Pa.C.S.A. §§ 9541-9546.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*).  As to counsel's duty to inform an appellant of his rights in light of counsel's proposed withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."  *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, an *Anders* brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Here, Counsel's application to withdraw states that she conducted a thorough and conscientious examination of the record, and concluded Appellant's appeal is frivolous.  Application to Withdraw, 3/4/25, ¶ 4.  Counsel also avers that she served Appellant with a copy of her application, along with the *Anders* brief, via U.S. Priority mail.  *Id.* ¶ 3.  Counsel has also attached to her application to withdraw a copy of a letter she sent to Appellant, informing him of his right to retain new counsel or proceed *pro* se and raise any additional claims he deems worthy of attention.  *Anders* Letter, 3/4/25.

In addition, Counsel's *Anders* brief summarizes the facts and procedural history, includes issues that could arguably support Appellant's

appeal, and explains Counsel's assessment of why the issues are frivolous, with citations to the record and relevant legal authority.[3] Counsel's **Anders** brief complies with the dictates of **Santiago**.

As Counsel has complied with **Anders**, we review the issues presented in the **Anders** brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015); **see also Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears … to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

The **Anders** brief challenges (a) the sufficiency of the evidence underlying Appellant's convictions; and (b) the verdicts as against the weight of the evidence. **Anders** Brief at 6, 9. We address each issue in turn.

As this Court has explained,

> [a] claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court

_____

[3] We note that Appellant has filed a *pro se* response, asserting a challenge to the violation of his constitutional right to due process, based upon trial counsel's actions or ineffectiveness. *Pro Se* Response, 4/4/25, at ¶¶ (a)-(f).

is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citation omitted).

Regarding Appellant's conviction of criminal attempt (homicide), the Crimes Code provides that

"[a] person commits attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901. Further, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. § 2501. Additionally, "[t]he use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill." *Commonwealth v. Randolph*, … 873 A.2d 1277, 1281 (Pa. 2005).

With respect to the charge of Criminal Attempt (Homicide), the Commonwealth was required to present evidence to show that Appell[ant] committed a substantial step toward "intentionally, knowingly, recklessly or negligently caus[ing] the death of another human being." 18 Pa.C.S.A. § 2501.

*Commonwealth v. Hilliard*, 172 A.3d 5, 12 (Pa. Super. 2017).

Appellant also was convicted of two counts of aggravated assault, which the Crimes Code defines as follows:

A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

\*     \*     \*

- 7 -

> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4).[4]  The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain."  18 Pa.C.S.A. § 2301. A deadly weapon includes firearms or "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."  *Id.*

At trial, the Commonwealth presented evidence that Appellant stabbed Mr. Baglivo in his chest with a bodega knife.  N.T., 11/16/23, at 91-92; *see also id.* at 27 (describing the stab wound to Mr. Baglivo).  As a result of the stabbing, Mr. Baglivo underwent surgery requiring an incision from Mr. Baglivo's chest up to his sternum, and the cutting of his diaphragm to allow viewing of the pericardial sac.  *Id.* at 33-35.  The knife wound missed Mr. Baglivo's heart by mere millimeters.  *Id.* at 37.

The evidence demonstrated that Appellant committed a substantial step toward intentionally causing the death of another human being, *i.e.*, using a deadly weapon. The evidence further established that Appellant, using a deadly weapon, caused bodily injury to Mr. Baglivo.  The evidence was, therefore, sufficient to sustain Appellant's convictions for criminal attempt-

---

[4] A conviction under subsection (1) is classified as a first-degree felony.   18 Pa.C.S.A. § 2702(b).   A conviction under subsection (4) is classified as a second-degree felony.  *Id.*

homicide and aggravated assault under both subsections. Thus, Appellant's challenges to the sufficiency of the evidence underlying his convictions lack merit and are frivolous.

The **Anders** brief also presents a challenge to the verdicts as against the weight of the evidence. As our Supreme Court has explained,

> [i]n reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose [an] abuse of discretion.

**Commonwealth v. Anderson**, 323 A.3d 744, 757 (Pa. 2024) (citations omitted).

Here, Appellant filed no post-sentence motion challenging the verdicts as against the weight of the evidence.[5] Pennsylvania Rule of Criminal Procedure 607 requires that a claim challenging the weight of the evidence be raised with the trial judge in a motion for a new trial

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3).

_____

[5] Although Appellant filed a *pro se* post-sentence motion, he did not challenge the verdicts as against the weight of the evidence.

Instantly, by not filing a post-sentence motion, Appellant deprived the trial court of the opportunity to exercise its discretion in reviewing his weight claim. Consequently, we are unable to review the trial court's exercise of its discretion. *See Anderson*, 323 A.3d at 757. Appellant's present weight claim is, therefore, waived and frivolous. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (stating that an appellant waives review of a weight claim if it is raised for the first time on appeal).

In his *pro se* response to the *Anders* brief, Appellant raises several additional issues alleging a denial of his constitutional right to due process, based upon the actions or inactions of his trial counsel. *Pro Se* Response, 3/31/25, at 1-3 (unpaginated). These issues, in essence, claim the ineffective assistance of his trial counsel.

In *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed its prior holding in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), and held that absent certain circumstances,

> claims of ineffective assistance of counsel are to be deferred to PCRA review; … such claims should not be reviewed upon direct appeal.

*Holmes*, 79 A.3d at 576 (footnote omitted).

This Court has recognized limited exceptions allowing for review on direct appeal (1) in the extraordinary case where the trial court determines that the ineffectiveness claim is both meritorious and apparent from the record; or (2) where good cause is shown for post-verdict review of

- 10 -

ineffectiveness claims and the defendant has waived his right to file a petition under the PCRA. *Commonwealth v. Watson*, 310 A.3d 307, 310-11 (Pa. Super. 2024). A third exception, which requires trial courts to address ineffectiveness claims where the defendant is statutorily precluded from obtaining PCRA review, also may permit ineffectiveness review in a direct appeal. *Id.* at 311.

Our review in the present case reveals no applicable exception that would allow us to review Appellant's ineffectiveness claims.[6] Thus, they lack merit and are frivolous.

Finally, our independent review discloses no non-frivolous issues that Appellant could raise on appeal. Accordingly, we grant Counsel's application to withdraw, and affirm Appellant's judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025

---

[6] Although we do not address these issues, Appellant may raise his ineffectiveness claims in a timely filed PCRA petition.