J-S24006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT EDWARD WALTER | : | |
| Appellant | : | No. 1338 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 28, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001870-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT EDWARD WALTER | : | |
| Appellant | : | No. 1339 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 28, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000193-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT EDWARD WALTER | : | |
| Appellant | : | No. 1340 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 28, 2024
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001536-2023

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: December 10, 2025**

Appellant Robert Edward Walter appeals from the judgments of sentence imposed after a jury convicted him of one count of failure to comply with sex offender registration requirements — failure to verify residence (Failure to Verify Residence) and two counts of failure to comply with sex offender registration requirements — failure to comply with counseling requirements (Failure to Comply with Counseling).[1]  Appellant challenges the sufficiency of the evidence and the discretionary aspects of his sentence.  We affirm.

The trial court summarized the facts of the case as follows:

The facts underlying []Appellant's conviction are as follows: []Appellant was convicted of rape on November 22, 2010. Following his conviction, he was assessed by the Sexual Offender's Assessment Board ("SOAB") and was determined [to be a] Sexually Violent Predator ("SVP").  Thus, pursuant to his registration and verification obligations under the Sex Offender Registration and Notification Act ("SORNA["]),[2] []Appellant was required to attend monthly counseling and to register and verify all current and intended residences quarterly.  []Appellant first registered at 410 East Bell Avenue, Altoona, PA, 16602 ("410 East Bell Avenue").  Every three (3) months thereafter, he signed a Sex Offender Verification form attesting his residence had remained the same.  However, the Altoona Police Department received a tip that []Appellant was living at 1423 3rd Avenue, Apartment 2, Altoona, PA, 16602 ("1423 3rd Avenue"). Detective Heuston made contact at 410 East Bell Avenue with []Appellant's Mother, Georgeann Weyandt ("[Appellant's] Mother"), who informed him that []Appellant was residing with his girlfriend,

---

[1] 18 Pa.C.S. § 4915.2(a)(2) and (a.1)(1), respectively.

[2] 42 Pa.C.S. §§ 9799.10 to 9799.75.

Kristin Ebersberger ("Ms. Ebersberger"), at 1423 3rd Avenue and had not been living at 410 East Bell Avenue for a few months. Following an investigation by police it was determined that []Appellant was indeed living at 1423 3rd Avenue with Ms. Ebersberger, the couple's baby, and Ms. Ebersberger's three (3) other minor children. []Appellant was arrested and charged with . . . Failure to Verify Residence [at trial court docket number 1870-2021].

In the terms of his counseling requirements, []Appellant was discharged from Project Point of Light ("PPL") on January 13, 2021, and there is no evidence of compliance with counseling requirements thereafter. On January 10, 2023, and subsequently on April 13, 2023, []Appellant received two (2) separate criminal charges for Failure to Comply with Counseling pursuant to SORNA [at trial court docket numbers 193-2023 and 1536-2023, respectively]. Although []Appellant made a partial payment on April 20, 2023, to enroll with Forensic Associates for Assessment Consultation [Treatment] ("FAACT") to receive counseling, []Appellant failed to complete the intake stage. Further, the partial payment was submitted after []Appellant was rearrested and charged with the second [count of Failure to Comply with Counseling] on April 13, 2023.

\*     \*     \*

The jury trial commenced on June 17, 2024. The parties stipulated that (1) []Appellant is required to register under SORNA based on a 2010 conviction;[3] (2) []Appellant is required to undergo monthly counseling as [an SVP]; and (3) []Appellant's requirements were in place at the time of the allegations in the matters before the jury.

Trial Ct. Op., 12/13/24, at 1-4 (some formatting altered).

The trial court summarized the evidence presented at trial regarding

Appellant's residence as follows:

_____

[3] Specifically, Appellant is subject to the registration requirements of Subchapter I of SORNA. **See** 42 Pa.C.S. §§ 9799.52, 9799.55 (providing that Subchapter I applies to offenders who committed an enumerated sex offense on or after April 22, 1996, but before December 20, 2012).

[Adult Probation Officer (APO) Jeffrey] Lagergren described that his duties as a probation and parole officer encompassed routinely, impromptu home visits to supervisees. He started supervising []Appellant in the end of the summer 2021 and was unable to contact []Appellant at his registered address at 410 East Bell Avenue. APO Lagergren said he went to 410 East Bell Avenue four to five time[s] between mid-summer 2020 through July 2021, and []Appellant was never there. In contrast, he further explained, he traveled to 1423 3rd Avenue approximately six to seven times in a period of eight months, making contact there with []Appellant every time.

Particularly, APO Lagergren reported that in May 2021, he and his office partner went to 1423 3rd Avenue, knocked on the door, and no one answered. Nevertheless, through a window, he was able to observe a child up in the window, which worried him. At that point, Ms. Ebersberger ([]Appellant's girlfriend) appeared walking down the sidewalk and indicated []Appellant was inside the residence with the child. Then, Ms. Ebersberger allowed APO Lagergren inside the apartment where []Appellant was found, indicating he had just fallen asleep. APO Lagergren testified he spotted dirty male adult clothing on the floor and male toiletries in the bathroom.

. . . . Appellant was working a night shift during the May 2021 incident, and during the day, he would be at 1423 3rd Avenue to care for his newborn child and help with the other children at home. . . .

Patrolman Phillip Miller ("Patrolman Miller") also testified at trial. He averred that on July 29, 2021, at approximately 22:00 hours, he was dispatch[ed] to 1423 3rd Avenue, Apartment 2, for a reported disturbance. When Patrolman Miller entered Apartment 2, he saw male adult clothing throughout the residence, too large to belong to the children, and male shampoo and deodorant. Further, he testified that the caller and first floor neighbor, Michael Glunt ("Mr. Glunt"), related to Patrolman Miller as follows:

[H]e could hear disturbances coming from the upstairs arguing between [Appellant] and Ms. [Ebersberger] many nights of the week, several different times, all hours of the day, early in the morning, late at night throughout the night, being woken up while [Mr. Glunt] was sleeping. [Mr. Glunt] stated that he gets up extremely early for work approximately 3-4 o'clock in the morning. [Mr. Glunt] could

hear [Appellant]. [Mr. Glunt would go outside sometimes and see []Appellant] smoking a cigarette outside. Uh, and that he came and go --- came and went as if he lived at the residence.

[N.T. Trial, 6/17/24, at 233].

Patrolman Miller related as well of two prior police encounters with []Appellant at 1423 3rd Avenue on May 10, 2021, at or around midnight, and December 30, 2021, at 12:41 p.m.

\* \* \*

Detective [Eric] Heuston from the Altoona Police Department testified at trial that he was assigned to investigate whether []Appellant was failing to comply with registration and verification of his address. . . . On July 16, 2021, at approximately 09:00 a.m., Detective Heuston went to 410 East Bell Avenue aiming to make contact with []Appellant. Instead, Detective Heuston met []Appellant's Mother. Detective Heuston introduced himself as an Altoona Police Department detective and explained to []Appellant's Mother the nature of the investigation. [Appellant's] Mother initially told Detective Heuston that []Appellant was still living there but was not home at the time. Then, Detective Heuston asked []Appellant's Mother permission to see []Appellant's bedroom, but she denied the request, stating there was a dog inside the bedroom and she did not want to move the dog. Detective Heuston described that he politely asked []Appellant's Mother whether she could move the dog just for him to verify that the []Appellant's personal property was in the house so that he could close the investigation. Given the request, []Appellant's Mother confessed to Detective Heuston that she initially lied, and []Appellant was in fact not living there. She further told Detective Heuston that []Appellant had no personal effects at 410 East Bell Avenue because he had not been living there for months and that []Appellant periodically visited her for an hour at best. []Appellant's Mother provided Detective Heuston her son's unofficial address, which Detective Heuston described as being located on the 1400 block of 3rd Avenue, where []Appellant was living with his girlfriend, Ms. Ebersberger.

*Id.* at 16-18, 21-22 (some citations omitted and formatting altered).

Additionally, the following evidence was presented regarding Appellant's monthly counseling requirements:

APO Lagergren testified []Appellant was discharged on January 13, 2021, from PPL, a counseling organization approved to treat sex offenders and where []Appellant was receiving counseling monthly. APO Lagergren was actively aiding []Appellant to enroll with FAACT because []Appellant was not abiding by his counseling requirements after PPL discharged him. Thus, in December 2022, APO Lagergren reached out to Ann Lukas ("Ms. Lukas"), FAACT manager, to find out the requirements for []Appellant to enroll in monthly counseling with FAACT, at which time APO Lagergren was informed []Appellant had to pay a $300 fee and set an appointment for intake. Also, []Appellant advised APO Lagergren that he had spoken with Ms. Lukas and was aware of the steps to get into counseling through FAACT. As per APO Lagergren, by January 10, 2023, []Appellant had not made payment for enrollment, preventing him from scheduling an intake with FAACT. Akin to January, by April 13, 2023, []Appellant's counseling requirement remained unfulfilled.

. . . . Ms. Lukas [testified about] her phone conversations with []Appellant in an aim to help him enroll in counseling. In one of the conversations, Ms. Lukas stated, she explained to []Appellant he needed to pay $300 for her to schedule the intake, which could be by phone.

The second conversation was described as taking place by phone on April [13], 2023, while []Appellant was meeting with State Trooper Luciano ("Trooper Luciano"). During the exchange, Ms. Lukas refused to provide FAACT's address to []Appellant and Trooper Luciano, clarifying that []Appellant was not a client of FAACT.

Trooper Luciano took the stand and reiterated he was present during the described phone conversation between []Appellant and Ms. Lukas on April 13, 2023, and that at Trooper Luciano's request, the phone call was placed on speakerphone. Most precisely, Trooper Luciano testified that, while in the process of verifying []Appellant's SORNA requirements, []Appellant informed Trooper Luciano he was doing counseling through FAACT. So, when Trooper Luciano requested FAACT's address, []Appellant informed him he did not have an address but proceeded to call

FAACT's headquarters. That was when Trooper Luciano learned from Ms. Lukas that []Appellant had neither paid the fee nor done the intake [interview] . . . .

*Id.* at 10-12 (citations omitted and some formatting altered).

We add that Appellant paid FAACT $260 for an intake appointment on April 20, 2023. *See* N.T., 6/17/24, at 163-65. Ms. Lukas scheduled an intake interview for Appellant at FAACT on April 27, 2023 at 10 a.m. via telemedicine. *See id.* at 159-60. FAACT called Appellant three times that day, but Appellant did not answer. *See id.* at 169.

The jury convicted Appellant of all counts on June 18, 2024. On August 28, 2024, the trial court sentenced Appellant to consecutive terms of two to four years' incarceration for Failure to Verify Residence at Docket No. 1870-2021, one to two years' incarceration for Failure to Comply with Counseling at Docket No. 193-2023, and one to two years' incarceration for Failure to Comply with Counseling at Docket No. 1536-2023. The trial court also imposed a consecutive term of one year of re-entry supervision.[4] *See* Sentencing Order, 8/28/24, at 1-2, 6-7. Therefore, Appellant's aggregate sentence is four to eight years' incarceration followed by one year of re-entry supervision. *See id.* at 8.

Appellant filed a timely post-sentence motion seeking reconsideration of his sentence, which the trial court denied. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

_____

[4] *See* 61 Pa.C.S. § 6137.2(b).

Appellant presents four issues for our review, which we have reordered as follows:

1. Whether there was insufficient evidence to sustain a conviction at number 1338 WDA 2024 for the charge of Failure to Verify Address where the evidence adduced at trial failed to show that [Appellant] resided at any address other than the address he had already verified with the Pennsylvania State Police.

2. Whether there was insufficient evidence to sustain a conviction at number 1339 WDA 2024 for the charge of Failure to Comply with Counseling where the evidence adduced at trial failed to show that [Appellant] knowingly failed to comply with his counseling requirements at the time of his registration on January 10, 2023.

3. Whether there was insufficient evidence to sustain a conviction at number 1340 WDA 2024 for the charge of Failure to Comply with Counseling where the evidence adduced at trial failed to show that [Appellant] knowingly failed to comply with his counseling requirements and instead showed that [Appellant] believed he was enrolled in counseling at the time of his quarterly update with the Pennsylvania State Police on April 13, 2023.

4. Whether the Trial Court abused its discretion by sentencing [Appellant] to an aggregate sentence of four (4) to eight (8) years with one (1) year re-entry where the information presented during the sentencing hearing, and the time that had elapsed since the underlying conviction which brought about the counseling requirements, tended to support concurrent sentences instead of the consecutive sentences which [Appellant] received.

Appellant's Brief at 4-5.

**Failure to Verify Residence**

In his first issue, Appellant argues that the evidence was insufficient to establish that he "resided at any address other than the one he consistently verified with the Pennsylvania State Police[,]" *i.e.*, 410 East Bell Avenue. *Id.*

at 18. Specifically, Appellant contends that the evidence did not establish Appellant was staying at 1423 3rd Avenue for thirty consecutive days or more. *Id.* at 18-19. Appellant claims that APO Lagergren did not see any toiletries for Appellant at 1423 3rd Avenue. *Id.* at 19 (citing N.T. Trial, 6/17/24, at 124). Appellant also notes that Ms. Ebersberger testified that Appellant resided at 410 East Bell Avenue and not with her at 1423 3rd Avenue. *Id.* (citing N.T. Trial, 6/19/24, at 79). Additionally, Appellant explains that Ms. Ebersberger testified that in 2021, Appellant was working six nights per week and Appellant left some clothing at her residence. *Id.* at 17 (citing N.T. Trial, 6/19/24, at 75, 80).

Our standard of review for challenges to the sufficiency of the evidence is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and some formatting altered); ***see also Commonwealth v. Lyons***,

- 9 -

833 A.2d 245, 258 (Pa. Super. 2003) (explaining that the "[e]xistence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict" (citations omitted)).

Section 4915.2 provides, in relevant part:

**(a) Offense defined.—**An individual who is subject to registration under 42 Pa.C.S. § 9799.55(a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual knowingly fails to:

\*    \*    \*

(2) verify the individual's residence . . . as required under 42 Pa.C.S. § 9799.60 (relating to verification of residence) . . . .

18 Pa.C.S. § 4915.2(a)(2).

Under SORNA Subchapter I, an individual designated as an SVP must register for life.  42 Pa.C.S. § 9799.55(b)(3).

Section 9799.60 of SORNA states, in relevant part:

The Pennsylvania State Police shall verify the residence and compliance with counseling as provided for in section 9799.70 (relating to counseling of sexually violent predators) of sexually violent predators every 90 days . . . .  For the period of registration required by section 9799.55 (relating to registration), a sexually violent predator shall appear quarterly within 10 days of the dates designated by the Pennsylvania State Police each calendar year at an approved registration site to complete a verification form and to be photographed.

42 Pa.C.S. § 9799.60(a).

Further, Section 9799.56 provides, in relevant part:

[(1)](iii) For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with **all current or intended residences**, all information

- 10 -

> concerning current or intended employment and all information concerning current or intended enrollment as a student.
>
> (2) Offenders and sexually violent predators shall inform the Pennsylvania State Police within three business days of:
>
> > (i) A change of residence or establishment of an additional residence or residences.

42 Pa.C.S. § 9799.56(a)(1)(iii), (a)(2)(i) (emphasis added).

Section 9799.53 of SORNA defines "residence," in relevant part, as "[a] location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9799.53.

> Our Supreme Court has stated:
>
> Each subsection of [Section 4915.2(a)] contains two elements. The first element identifies the action that the sexual offender failed to perform. . . . [S]ubsection (a)(2) applies when a sexual offender "knowingly" fails to verify his or her residence . . . . The second element lists the statutory sections that impose the registration and verification requirements. In other words, the statute includes both the action that the sexual offender was required to take and the statutory provision mandating that action. . . . [T]he latter portion of Subsection (a)(2), "as required under 42 Pa.C.S. § 9799.60," identifies the provision of SORNA that requires a sexual offender to "verify [his or her] residence . . . ."

*Commonwealth v. Roberts*, 329 A.3d 1129, 1137 (Pa. 2025).

> Here, the trial court explained:
>
> []Appellant was under the obligation to register and verify **all current or intended residences**, and any residence where he would spend thirty (30) or more consecutive days in a year. As for []Appellant's intent, this court is convinced that []Appellant envisioned changing his residence to 1423 3rd Avenue for purposes of probation because he discussed it with APO

- 11 -

Lagergren, showing that 1423 3rd Avenue was an intended residence pursuant to Section 9799.56. **See** 42 Pa.C.S. § 9799.56. Simply put, if []Appellant intended to change his address for purposes of probation, his intention would necessarily overlap under the requirements imposed by SORNA. Moreover, under SORNA, []Appellant was not required to necessarily change his address, but to notify the Pennsylvania State Police within three days of an "establishment of an additional residence or residences." **See id.** § 9799.56(a)(2)(i).

In addition to the sufficient proof that 1423 3rd Avenue was an intended residence for []Appellant, the cumulative circumstantial evidence similarly shows that []Appellant spent at least thirty (30) consecutive days in a year at 1423 3rd Avenue.

Trial Ct. Op., 12/13/24, at 19-20 (some citations omitted and emphasis in original).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for Failure to Verify Residence. **See Palmer**, 192 A.3d at 89. Specifically, the record reflects that Appellant identified 410 East Bell Avenue as his address during his required quarterly SORNA registrations. **See** N.T. Trial, 6/17/24, at 46. However, since at least May of 2021, Appellant was staying with at 1423 3rd Avenue with his girlfriend, their child, and his girlfriend's other children. **See id.** at 93-94. Both APO Lagergren and Patrolman Miller saw clothing and toiletries that belonged to an adult male, and not to Ms. Ebersberger or any of her children. **See id.** at 95, 140, 230-31, 248. APO Lagergren, Patrolman Miller, and Detective Heuston encountered Appellant at 1423 3rd Avenue on at least ten separate occasions

between May and December of 2021. **See id.** at 93, 96, 228-29, 236-37; N.T. Trial, 6/18/24, at 36. Further, Appellant's mother admitted to Detective Heuston that Appellant was not living with her at 410 East Bell Avenue, and that he was living with Ms. Ebersberger. **See** N.T. Trial, 6/18/24, at 34-35. Lastly, Ms. Ebersberger's downstairs neighbor, Mr. Glunt, testified that he frequently saw Appellant at and around 1423 3rd Avenue. **See id.** at 21-27. Based on the foregoing, there is sufficient evidence to establish that Appellant resided at 1423 3rd Avenue for more than thirty consecutive days in the calendar year of 2021, and Appellant did not provide that address to the Pennsylvania State Police as required under SORNA Subchapter I. **See Roberts**, 329 A.3d at 1137; **see also** 42 Pa.C.S. § 9799.53. Therefore, Appellant is not entitled to relief on this claim.[5]

---

[5] We note that to the extent Appellant argues that the evidence regarding the presence of adult male clothing and toiletries at 1423 3rd Avenue was inconsistent and relies on Ms. Ebersberger's testimony that Appellant did not reside at 1423 3rd Avenue, this claim actually goes to the weight of the evidence, not the sufficiency. **See, e.g.**, **Commonwealth v. Barkman**, 295 A.3d 721, 733 (Pa. Super. 2023) (explaining that unlike weight-of-the-evidence claim, "a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict" (citation omitted)); **Commonwealth v. Johnson**, 180 A.3d 474, 478 (Pa. Super. 2018) (reiterating that "[v]ariances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence" (citation omitted)).

In order to preserve a weight of the evidence claim for appeal, a defendant must raise it before the trial court in a motion for a new trial, either prior to sentencing or in a post-sentence motion. **See** Pa.R.Crim.P. 607(A); **see also Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012) (explaining that "[f]ailure to properly preserve the [weight of the evidence] claim will result in waiver" (citation omitted)). Here, Appellant did not request
*(Footnote Continued Next Page)*

**Failure to Comply with Counseling**

Appellant's second and third issues are related, therefore we will discuss them together. Appellant argues that the evidence was insufficient to establish that he knowingly failed to comply with his counseling requirements. Appellant's Brief at 20-23. With respect to his conviction at 1339 WDA 2024, Appellant contends that APO Lagergren testified that he assisted Appellant in attempting to enroll in SVP counseling with FAACT and Appellant was confused about the requirements to complete his enrollment with FAACT. *Id.* at 21 (citing N.T. Trial, 6/17/24, at 103, 129). As for his conviction at 1340 WDA 2024, Appellant claims that he had made a partial payment to FAACT for his intake interview. *Id.* at 22 (citing N.T. Trial, 6/17/24, at 165). Appellant also asserts that his phone call with Ms. Lukas on April 13, 2023 while Appellant was at his quarterly SORNA registration shows that he was confident that he had enrolled with FAACT. *Id.* at 23 (citing N.T. Trial, 6/17/24, at 211-23). Appellant concludes that his confusion regarding his enrollment status with FAACT "negates" the element that he knowingly failed to comply with his counseling requirements. *Id.*

Section 4915.2 states, in relevant part:

An individual who is designated as a sexually violent predator commits an offense if the individual knowingly fails to comply with

---

a new trial based on a claim that the verdict was against the weight of the evidence during his sentencing hearing or in a post-sentence motion; therefore, this claim is waived. ***See Lofton***, 57 A.3d at 1273.

> 42 Pa.C.S. § 9799.70 (relating to counseling of sexually violent predators).

18 Pa.C.S. § 4915.2(a.1)(1).

> Section 9799.70 provides, in relevant part:

> For the period of registration required by section 9799.55(b) (relating to registration), a sexually violent predator shall be required to attend at least monthly counseling sessions in a program approved by the board and be financially responsible for all fees assessed from the counseling sessions. The board shall monitor the compliance of the sexually violent predator. If the sexually violent predator can prove to the satisfaction of the court that the person cannot afford to pay for the counseling sessions, that person shall still attend the counseling sessions and the parole office shall pay the requisite fees.

42 Pa.C.S. § 9799.70(a).

> "Knowingly" is defined as follows:

> (2) A person acts knowingly with respect to a material element of an offense when:

> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

> Further, our Supreme Court has stated:

> For purposes of a criminal prosecution, a *mens rea* of "knowingly" requires that a person must be aware of the nature of his conduct, or be "practically certain" that his conduct will create a particular result. Knowledge in this context necessarily entails a choice. The person must know of the potential consequences of his actions, and then nonetheless must choose to take the action anyway. The bedrock principles of our criminal law prohibit holding a person

criminally liable for failing to do something that he did not know that he was required to do. To hold otherwise would be anomalous to those principles, absent unmistakable evidence that the General Assembly intended to criminalize such behavior. No such evidence exists in the failure to comply statute.

*Roberts*, 329 A.3d at 1139 (footnote omitted).

Here, the trial court explained:

The evidence was sufficient to conclude that, despite APO Lagergren's, Ms. Lukas's, and Trooper Luciano's assistance, []Appellant knowingly failed to comply with counseling requirements under SORNA.

Trial Ct. Op., 12/13/24, at 13.

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's convictions for Failure to Comply with Counseling. *See Palmer*, 192 A.3d at 89. The record reflects that Appellant stipulated that he was required to register under SORNA and undergo monthly counseling as an SVP and both of these requirements were in effect on the dates of the offenses. *See* N.T. Trial, 6/17/24, at 260-62. Further, letters were sent to Appellant which included reminders of the dates he had to register and the requirement that he attend monthly counseling sessions. *See id.* at 42-44. With respect to Appellant's conviction at 1339 WDA 2024, the record shows on January 10, 2023 Appellant attended his quarterly SORNA registration and during the registration process, Appellant informed Trooper Patrick Wise that he had not attended counseling since 2021 because he had been discharged from Project

Point of Light. *See* N.T. Trial, 6/17/24, at 188; *see also id.* at 97-98 (APO Lagergren testified that Appellant had been discharged from PPL's sex offender treatment program on January 13, 2021). Lastly, APO Lagergren explained that Appellant had not paid the $300 fee for the intake interview at FAACT's as of January 10, 2023. *See id.* at 105. Based on these facts, there is sufficient evidence to establish that Appellant knowingly failed to comply with counseling requirements of 42 Pa.C.S. § 9799.70 on January 10, 2023, because he was aware of his requirement to attend monthly SVP counseling and he did not attend counseling following his discharge from PPL through to January 10, 2023. *See Roberts*, 329 A.3d at 1139; 18 Pa.C.S. §§ 302(b)(2); 4915.2(a.1)(1).

As for Appellant's conviction at 1340 WDA 2024, the record reflects that Appellant attended his quarterly SORNA registration on April 13, 2023, and during that registration, Appellant called Ms. Lukas, who works at FAACT. *See* N.T. Trial, 6/17/24, at 155, 162, 211. During that call, Ms. Lukas informed Trooper Luciano that Appellant was neither a client nor a patient of FAACT at that time. *See id.* at 158, 212. Ms. Lukas informed Appellant that he had to pay a $300 fee to enroll in counseling with FAACT prior to April 13, 2023 and he had not done so as of that date. *See id.* at 153, 158-59, 168. Ms. Lukas also testified that Appellant paid $260 towards the fee for the intake interview on April 20, 2023, which was after Appellant's quarterly SORNA registration. *See id.* at 163-65. Ms. Lukas scheduled Appellant for an intake interview on April 27, 2023. *See id.* at 159-60. Based on these facts, there is sufficient

evidence to establish that Appellant knowingly failed to comply with counseling requirements of 42 Pa.C.S. § 9799.70 on April 13, 2023, because was aware of his requirement to attend monthly SVP counseling and Appellant had not paid the $300 fee to FAACT nor participated in the intake interview at that time. *See Roberts*, 329 A.3d at 1139; 18 Pa.C.S. §§ 302(b)(2); 4915.2(a.1)(1). For these reasons, Appellant is not entitled to relief on these claims.[6]

### Discretionary Aspects of Sentencing

Lastly, Appellant challenges the discretionary aspects of his sentencing. Appellant's Brief at 12-15. Specifically, Appellant argues that the trial court abused its discretion and imposed an unduly harsh sentence by ordering Appellant's sentences for the instant convictions to run consecutively instead of concurrently. *Id.*

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

---

[6] Appellant's argument that there was evidence that FAACT's registration requirements were confusing, specifically whether the intake interview had to be conducted in person or via telemedicine does not affect our conclusion. *See Lyons*, 833 A.2d at 258 (stating that the "[e]xistence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict" (citations omitted)); *see also Johnson*, 180 A.3d at 478 (Pa. Super. 2018) ( explaining that "[v]ariances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence" (citation omitted)).

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted). "To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." **Commonwealth v. Malovich**, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); **see also** Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Battles**, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Grays**, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

"Generally speaking, the courts exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." **Commonwealth v. Mastromarino**, 2 A.3d 581, 586 (Pa. Super. 2010) (citations omitted); **see also Commonwealth v. Dodge**, 77 A.3d 1263, 1270

- 19 -

(Pa. Super. 2013) (explaining that "a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question" (citations omitted)). However, this Court has held that "a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence[.]" ***Dodge***, 77 A.3d at 1273 (citations omitted and emphasis in original).

In ***Dodge***, the trial court imposed over forty consecutive sentences of incarceration, all of which were within the standard range of the sentencing guidelines, resulting in an aggregate sentence of forty years and seven months to eighty-one years and two months of incarceration. ***See id.*** at 1268. On appeal, this Court held that the defendant raised a substantial question regarding "whether the "decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case[.]" ***Id.*** at 1273 (citations omitted); ***see also Mastromarino***, 2 A.3d at 587 (explaining that "the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case" (citation and footnote omitted)).

Here, the record confirms that Appellant preserved his sentencing claims in a post-sentence motion, filed a timely notice of appeal, and included the

issues in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief. *See* Appellant's Brief at 9-11.

In his Rule 2119(f) statement, Appellant explains that

there is a substantial question in the instant matter where he did receive consecutive sentences for each of the charges of Failure to Comply with Counseling, though they are misdemeanor charges, the requirement stems from an underlying conviction that was the result of a guilty plea that took place on May 19, 2011, and [Appellant] had testified during the sentencing hearing on these matters as to the reasons he was kicked out of counseling and his efforts to get into counseling at the time of the underling offenses. For these reasons, it is respectfully submitted that consecutive sentences are inappropriate under the facts and circumstances of the instant matters.

*Id.* at 11 (citing *Dodge*, 77 A.3d at 1270-72) (some formatting altered).

Following our review, we conclude that Appellant's Rule 2119(f) statement, which merely makes a bald allegation of excessiveness, fails to raise a substantial question. *See Dodge*, 77 A.3d at 1270; *Mastromarino*, 2 A.3d at 586. Specifically, in *Dodge*, the trial court imposed consecutive sentences on more than forty convictions, resulting in an aggregate sentence of approximately forty to eight-one years' incarceration. *See Dodge*, 77 A.3d at 1268. Whereas here, the trial court imposed consecutive sentences on three convictions and Appellant's aggregate sentence is four to eight years' incarceration followed by one year of re-entry supervision. *See* Sentencing Order, 8/28/24, at 1-2, 6-8. Appellant's sentence does not, on its face, appear to be excessive in light of the criminal conduct at issue. *See Dodge*, 77 A.3d

- 21 -

at 1273; **Mastromarino**, 2 A.3d at 587. Therefore, we decline to address the merits of Appellant's sentencing claim.

For the reasons stated above, we affirm Appellant's judgments of sentence.

Judgments of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/10/2025